O’NIELL, C. J.
 

 The defendant was convicted of the offense of having intoxicating liquor in' his possession for sale, and was condemned to pay a fine of $400 and be imprisoned two months, and, in default of paying the fine, to be imprisoned twelve months longer. He has appealed, and relies upon two bills of exception taken to the refusal of the judge to be governed by certain special charges, or propositions of law, submitted by his attorney as soon as all of the evidence was introduced. One of the two bills of exception was reserved to the overruling of a motion for a new trial, in which the defendant repeated his complaint of the judge’s rejection of the special charges, or principles of law, and contended that the conviction was contrary to the law and the evidence. All of the testimony heard on the trial of the case was taken down stenographically, and a complete transcript of it, which is very brief, is attached to and made part of the bills of exception.
 

 Although we have no authority to pass judgment on the question of guilt or innocence, or on the sufficiency of the evidence on that question, we must decide whether the special charges submitted by the defendant’s attorney were appropriate to the issues tendered by the evidence in the case; and, for that purpose, the defendant had the right, under Act 113 of 1896, p. 162, to attach the record of the testimony to his bills of exception and make it a part of them.
 

 The special charges, or propositions of law, which were submitted to the judge and rejected as being “not well founded in law,” were:
 

 (1) That the court could not legally con- , vict the defendant because intoxicating liquor was found in a remote spot on his premises, unless there was some evidence otherwise to show that the liquor had found its way there at his hands or by his direction.
 

 (2) That, where the evidence showed only that the liquor was found at least 100 yards from defendant’s house, it was in a remote place on the premises.
 

 (3) That the one who rents the farm and pays the rent and lives in the residence on the premises and works the farm is the one who is in possession of the premises, even though temporarily absent from home, at a hospital.
 

 (4) That the defendant, being a son of the woman who rented the premises, was not in possession of the premises by reason of
 
 *845
 
 his being there on a visit during his mother’s absence, even though he told the sheriff, at the time of the arrest, that he was in charge of the premises.
 

 The first of these charges, or'propositions of law, was taken almost literally from the opinion rendered by this court in State v. Rollins, 153
 
 La.
 
 13, 95 So. 265, viz.:
 

 “It could hardly be conceived that any court would convict an accused because intoxicating liquor was found in some remote spot upon his premises, unless the evidence showed that it had found its way there at his hands or by his direction. It is not at all impossible, and, we might say, not unlikely, that some one with a grudge against another might ‘plant’ or place intoxicants upon one's premises, without his knowledge, and bring about its discovery by the law enforcement agencies for purposes of revenge. Hence, if mere presence alone, and without any circumstance connecting the owner of the property with it, were sufficient, no one would be safe from a designing enemy.”
 

 It is astonishing how appropriate the language which we have quoted — and the special charges or propositions of law stated' — are to the facts shown by the undisputed testimony in this case. Two bottles and a jug of moonshine -whisky were found by the sheriff and two deputies on a farm that was rented by the defendant’s mother and. managed by his brother. They are colored people. The defendant did not live on the farm or have anything to do with the management of it, or have any interest in the crops raised on it. His brother, and the mother, who was very old but quite active, raised small cotton crops on the place; and the defendant’s children lived with their grandmother and helped about the place. The defendant’s brother, who worked the farm, was ill in a hospital in Shreveport, about 70 miles away, and the mother was at his bedside, when the whisky was found on the farm by the sheriff and his deputies. The discovery was made about 5 o’clock on a Saturday afternoon. The defendant had been working all day, cutting stove wood, for a Mr. White, about a mile away from the farm, and he had come to his mother’s home about an hour before the sheriff and his deputies came to find the whisky. They knew where to find it, because a colored man named Mayfield had told them it was there. Mayfield was offered and received a reward for the information. He was an enemy of the defendant, and had threatened vengenee, in a row with the defendant over an insulting note which May-field had sent to the defendant’s daughter— a school girl. She testified that she saw Mayfield go to the spot, where the whisky was afterwards found, carrying something in a sack, about three hours before the sheriff and his deputies came and found the whisky. It was in a very remote place, in or near the woods, on an unfenced part of the premises, and about 100 yards from the house. The sheriff testified that, when he arrested the defendant, after finding the whisky, he asked the defendant if he had charge of the place, and he replied that he had. That is a matter of no importance, because the defendant had been staying on the premises, with his children, in the absence of his mother and brother, during a period of five days before the whisky was discovered; and, in that sense, he did have charge of the place. The • sheriff searched the house and failed to find any other liquor; and there was no evidence of any paraphernalia for making whisky or any other intoxicating liquor. There was no evidence offered to prove that the defendant was or ever had been a bootlegger, or man of bad character in any other respect, except that he admitted that, three years and two months before the trial, he was accused of having intoxicating liquor in his possession, in another parish, and pleaded guilty. He declared that that was the only .time that he had had intoxicating liquor in his possession; and there was no evidence whatever offered to the contrary.
 

 The first of the special charges or propositions submitted by the defendant’s at
 
 *847
 
 torney was very appropriate to tlie evidence in tliis case, and should have been accepted and acted upon by the judge. The three other so-called special charges did not present abstract or clear-cut propositions of law, applicable to any or every prosecution for having possession of intoxicating liquor, but they were quite pertinent to the evidence in this case. The question as to whether a quantity of whisky, found 100 yards from the house in which the accused person resides or happens to be, and on the premises where he resides or happens to be, is to be considered as being in a
 
 remote
 
 place, depend^ upon all of the facts and circumstances of the case, and upon the importance or lack of importance of the distance from the house to the whisky; for the word “remote” is a very flexible or relative term, which, in the abstract, conveys no definite idea. The question whether the defendant was to be considered as being
 
 m possession
 
 or
 
 in charge
 
 of the premises was a matter of even less importance in this case. But it is quite certain that the judge would not have found the evidence sufficient to justify a conviction if he had accepted as correct the principle announced in State v. Rollins, supra.
 

 The conviction and sentence are annulled, and the case is ordered remanded for further proceedings consistent with this opinion.