285 So.2d 204 (1973)
STATE of Louisiana
v.
Wilford JACK.
No. 53548.
Supreme Court of Louisiana.
October 29, 1973.
Rehearing Denied November 20, 1973.
*205 W. Glenn Soileau, Ville Platte, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., LeRoy A. Hartley, Asst. Atty. Gen., Alfred R. Ryder, Dist. Atty., Errol D. Deshotels, Asst. Dist. Atty., for plaintiff-appellee.
SANDERS, Chief Justice.
Defendant, Wilford Jack, was tried under an indictment charging him with aggravated rape. R.S. 14:42. Defendant was convicted after a trial by jury and sentenced to life imprisonment in the state penitentiary. Defendant appeals, relying on 11 bills of exceptions.

BILLS OF EXCEPTIONS NOS. 1 and 3
Bill of Exceptions No. 1 was reserved after the trial court denied a motion to quash the jury venire. The motion was grounded upon the alleged exclusion of women, negroes, persons between 21 and 30 years of age, persons not obligated to pay utility bills and those who are not registered voters.
This Court has consistently upheld the constitutionality of Article 402 of the Louisiana Code of Criminal Procedure, exempting women from jury service. See, e. g., State v. Millsap, La., 274 So.2d 696 (1973); State v. Washington, La., 272 So. 2d 355 (1973); State v. Rollins, La., 271 So.2d 519 (1973); State v. McLeod, La., 271 So.2d 45 (1972); State v. Sinclair, 258 *206 La. 84, 245 So.2d 365, penalty vacated and remanded, 408 U.S. 939, 92 S.Ct. 2871, 33 L.Ed.2d 760 (1971). We adhere to these holdings.[1]
With regard to the exclusion of Negroes from the jury venire, it appears from the hearing on the motion for change of venue and motion to quash the indictment, that there was a member of the black race on the petit jury venire. (Tr. 12). Moreover, on the original jury venire list, chosen at random from the voter registration rolls, 47 of the 350 were of the black race. See LSA-C.Cr.P. Art. 408. Thus, there exists no showing of purposeful discrimination in the selection of the jury venire. The circumstance that the general venire was selected from the voter registration rolls does not, of itself, constitute a deprivation of constitutional rights. State v. Douglas, 256 La. 186, 235 So.2d 563, cert. denied, 401 U.S. 914, 91 S.Ct. 888, 27 L.Ed.2d 814 (1970); State v. Poland, 255 La. 746, 232 So.2d 499, penalty vacated and remanded, 408 U.S. 936, 92 S. Ct. 2862, 33 L.Ed.2d 754 (1970).
Moreover, no requirement exists that there be proportionate representation on the jury venire. Rather, the procedures must be reasonably designed to secure a representative sampling of the community. See: Coleman v. Alabama, 389 U.S. 22, 88 S.Ct. 2, 19 L.Ed.2d 22 (1967); Jones v. Georgia, 389 U.S. 24, 88 S.Ct. 4, 19 L.Ed. 2d 25 (1967); Sims v. Georgia, 389 U.S. 404, 88 S.Ct. 523, 19 L.Ed.2d 634 (1967).
Since there has been no showing of discrimination, the bill lacks merit.
Bill of Exceptions No. 3 pertains to the alleged systematic exclusion of college students from the jury.
The record indicates that two college students were excused from jury duty by the judge on their request because they were faced with final examinations in a few days.
Article 783 of the Louisiana Code of Criminal Procedure provides:
"The court may excuse a member of the petit jury venire at any time prior to the time he is sworn as a juror to try a particular case."
Excusing prospective jurors in advance of time of trial is within the sound discretion of the trial court. State v. Williams, 258 La. 801, 248 So.2d 295 (1971). The reasonable exercise of this discretion will not be disturbed unless there is a showing of fraud or collusion resulting in prejudice to the accused. State v. Ceaser, 249 La. 435, 187 So.2d 432 (1966).
No such showing has been made in the present case. Hence, the bill of exceptions lacks merit.

BILL OF EXCEPTIONS NO. 2
This bill of exceptions was reserved when the trial court denied a motion for dismissal and mistrial. The motion was grounded upon an alleged defect in the indictment, in that neither the indictment nor the record indicates that nine grand jurors concurred in the indictment. Attack is also made upon the endorsement by the Grand Jury foreman.
The requirements of an indictment are set forth in Article 383 of the Louisiana Code of Criminal Procedure:
"An indictment is a written accusation of crime made by a grand jury. It must be concurred in by not less than nine of the grand jurors, endorsed `a true bill,' and the endorsement must be signed by the foreman. Indictments shall be returned into the district court in open court; but when an indictment has been *207 returned for an offense which is within the trial jurisdiction of another court in the parish, the indictment may be transferred to that court."
This article provides that at least nine Grand Jurors must concur in the true bill. No requirement appears, either in this provision or in the jurisprudence, that the concurrence of the Grand Jurors should be manifested by their signatures on the indictment.
Among the written charges presented by the presiding judge to the Grand Jury was the following:
"At least nine members of the Grand Jury must concur in returning a `True Bill' or `Not a True Bill'". (Tr. 91)
Acting under this charge, the Grand Jury, with 11 jurors present returned an indictment as a "True Bill." This action meets the requirements of Article 383 with regard to an indictment return.
Further, the defendant contends that the indictment was defective because it was not endorsed a "True Bill."
This allegation lacks substance. In the present case, the indictment appeared with the printed words "A TRUE BILL." Under this line appeared the signature of the Foreman of the Grand Jury.
In State ex rel. Lewis v. Henderson, 259 La. 691, 251 So.2d 639 (1971), this Court held that such an endorsement was valid.
"The endorsement `A True Bill' may be printed as here, or typedit need not be handwritten by the foremanbefore it is signed by the foreman of the grand jury."
This bill lacks merit.

BILL OF EXCEPTIONS NO. 4
This bill purports to have been reserved when the trial judge sustained an objection by the state to more than one defense attorney examining a juror. No evidence is attached to or made part of the bill. Moreover, the transcript contains no mention of this bill. Hence, the bill cannot be considered. See State v. Sinclair, supra; State v. Palmer, 251 La. 759, 206 So. 2d 485 (1968).

BILL OF EXCEPTIONS NO. 5
This bill was reserved when the trial court overruled an objection to the state's use of peremptory challenges. Defendant alleges that the state used its peremptory challenges so as to systematically exclude Negroes from the jury.
A peremptory challenge is the statutory right to reject a given juror without disclosure of reason or motive. As such, the exercise of peremptory challenges is outside the control of the court and is not subject to judicial review. State v. Rossi, La., 273 So.2d 265 (1973); State v. Smith, 263 La. 75, 267 So.2d 200 (1972); State v. Square, 257 La. 743, 244 So.2d 200, penalty vacated and remanded, 408 U.S. 938, 92 S.Ct. 2871, 33 L.Ed.2d 760 (1971).
This bill is without merit.

BILL OF EXCEPTIONS NO. 6
This bill was reserved when the trial court denied a motion for a mistrial. The motion was grounded on alleged defects in the indictment, that is, failure to state the essential facts constituting the offense and to cite the statute the defendant was accused of violating.
The indictment in the present case reads as follows:
"That Wilford Jack at the Parish of Allen on the 26th day of October in the year of our Lord, One Thousand Nine Hundred Seveny-One Did Unlawfully Commit Aggravated Rape Upon Myrtis Jones, in violation of Louisiana Revised Statute14:42." *208 Under Article 465 of the Louisiana Code of Criminal Procedure, the short form indictment for the crime of aggravated rape is:
"A.B. committed aggravated rape upon C.D."
The above indictment substantially complies with the statutory form. The addition of other language, that is, the designation of the statute violated, does not affect its sufficiency. See LSA-C.Cr.P. Art. 465 (last paragraph).
This bill is without merit.

BILL OF EXCEPTIONS NO. 7
This bill was reserved when the trial court denied a motion for a mistrial grounded on the alleged failure of the state to introduce any evidence of penetration.
Assuming, without deciding, that the absence of such evidence can be raised by motion for mistrial, we have examined the evidence. Without detailing the evidence, we find it fulfills all requirements for jury consideration.
Bill of Exceptions No. 7 is without merit.

BILLS OF EXCEPTIONS NOS. 8, 9 and 10
These bills pertain to the trial court's sustaining the state's objections to attempts by the defense to elicit testimony concerning the chastity of the victim.
In rape cases, the rule in Louisiana is that: ". . . evidence is not admissible to prove specific acts of intercourse by the prosecutrix with other men." State v. Broussard, 217 La. 90, 46 So.2d 48 (1950).
However, evidence of the victim's general reputation for chastity is admissible when consent is put at issue by the defendant. State v. Smith, 259 La. 515, 250 So.2d 724 (1971); State v. Bolden, 257 La. 60, 241 So.2d 490 (1970); State v. Borde, 209 La. 905, 25 So.2d 736 (1946). Though such general reputation evidence may be admissible, specific acts of immorality cannot be shown. State v. Broussard, supra; State v. Perrine, 156 La. 855, 101 So. 243 (1924); State v. Hodgeson, 130 La. 382, 58 So. 14 (1912).
Bills of Exceptions Nos. 8 and 9 are without merit.
Bill of Exceptions No. 10 was perfected when the trial court refused to allow the defense counsel to inquire of Verona H. Aaron, who had testified that the general reputation of the victim for chastity was bad, about the content of specific conversations. (Tr. 293-297). The witness had already testified as to general reputation. The court correctly disallowed inquiry into particular incidents. See State v. Boudreaux, 221 La. 1078, 61 So.2d 878 (1952); State v. Ricks, 170 La. 507, 128 So. 293 (1930).
This bill is without merit.

BILL OF EXCEPTIONS NO. 11
This bill was reserved when the trial court refused to give special charges requested by the defense. In overruling the request the judge stated that the requested charges were covered in the general charge. (Tr. 318-320). See LSA-C.Cr.P. Art. 807.
Since the defendant has failed to make the general charge a part of his bill of exceptions, it doe not appear in the record. Under these conditions, nothing is presented for this Court's review. LSA-C.Cr.P. Arts. 841, 843, 844; State v. Preece, 264 La. 156, 270 So.2d 850 (1972); State v. Higginbotham, 261 La. 983, 261 So.2d 638 (1972); State v. Barnes, 257 La. 1017, 245 So.2d 159, appeal dismissed, 404 U.S. 931, 92 S.Ct. 289, 30 L.Ed.2d 244 (1971); State v. Burton, 166 La. 842, 118 So. 40 (1928).
The bill of exceptions lacks merit.
For the reasons assigned, the conviction and sentence are affirmed.
*209 BARHAM, J., dissents with reasons.
BARHAM, Justice (dissenting).
The defendant, a black, was charged with aggravated rape upon a white female. He was tried before an all-white jury and convicted. Bill of Exceptions No. 5 was reserved immediately after the empanelling of the jury when the court overruled defendant's objection to the State's use of peremptory challenges to systematically exclude all blacks from the jury panel.
In State v. Gray, 285 So.2d 199 (1973), I have dissented from the majority holding in regard to the State's exercise of peremptory challenges to systematically and discriminatively exclude all blacks from a jury where a black was accused of committing a crime against a white. The pertinent law relating to this issue is stated in that opinion, relying upon Swain v. Alabama, 380 U. S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965). I noted in that opinion that the court in Swain was reluctant to permit the facts in one case of total exclusion of blacks through use of peremptory challenges to establish an infringement on a defendant's constitutional rights of due process and equal protection. In our companion case today, in which I dissented, State v. Gray, the defendant showed exclusions of blacks through use of peremptory challenges in "black on white" situations continuously over a long period of time. I noted in that opinion that in Swain v. Alabama, the court thought it highly unlikely that a defendant could get an admission from the State of systematic exclusion of blacks from a jury for the purpose of establishing unconstitutional discrimination, but that apparently the court there would have accepted such an admission. It is under this theory of the Swain case that I proceed to state my reasons for dissent in the instant case.
The facts in the case before us are stipulated in the record between defense counsel and the district attorney. There were thirteen Negroes on the petit jury venire. The district attorney excused two for cause, and challenged the other eleven peremptorily. Of course, no Negroes served on the jury panel at all. The State obviously used only eleven of its twelve peremptory challenges and they were exercised for the purpose of excluding Negroes.
In argument before this Court, the State was asked if it had excluded all of the blacks from the jury panel for the sole purpose of empanelling an all-white jury in the trial of this defendant. The State's response was that it readily admitted that it had challenged each and every black called for possible empanelling for the sole purpose of excluding all blacks from this jury and forcing the defendant to trial before an all-white jury.
Swain v. Alabama has stated clearly that unrestricted use of the peremptory challenge by the prosecution, which effectively deprives a defendant of any chance of equal protection in the jury selection process, may constitute a constitutional violation. The court was reluctant to look behind the exercise of peremptory challenges for it has been an accepted trial technique over the years which allows both the State and the defense to challenge certain potential jurors without cause and without explaining the challenge. The court acknowledged, however, that the trial device, the peremptory challenge, is not constitutionally protected and that it could not be used to infringe the constitutional rights of a defendant.
The United States Supreme Court, after recognizing that peremptory challenges do not have constitutional protection when used to deprive one of constitutional rights, was concerned with what proof would be required of a defendant to establish invidious discrimination because of race when the State made use of peremptory challenges to exclude all members of that race. One standard set forth in Swain is that if a defendant establishes that the State, over a long period of time, exercised peremptory *210 challenges in order to exclude all members of the defendant's race from the panel, this would be a sufficient showing of deprivation of constitutional rights. The court also impliedly held that the state could admit its own dereliction in this respect to the benefit of the defendant. That is exactly the situation existing in this case. Thirteen Negroes were available and called for possible empanelling on this jury. Two were successfully challenged for cause. The State used eleven of its twelve peremptory challenges and used all eleven of them against blacks. The State has admitted to this Court that these challenges were exercised systematically and discriminatively for the purpose of excluding all blacks from the jury. What would it avail this defendant to show what happened in any other case? If this defendant's showing and the State's admission are not sufficient to establish a violation of his constitutional rights of equal protection and due process, what will suffice to make such a showing? This black defendant, accused of aggravated rape of a white woman, was forced through the deliberate actions of the State to trial before an all-white jury. For what purpose? Obviously, for the purpose of selecting a jury with basic prejudices against the race sufficient to tilt the scales of justice against the defendant if the case were a close one!
A reading of the record will show how close the factual determination could be accordingly as a jury is predisposed toward or impressed in the weighing of the credibility of the testimony of a black against the credibility of the testimony of a white in a one-on-one situation. The evidence in this case had to turn upon the jury's balancing the victim's testimony against the defendant's testimony. They are the only witnesses to the crime. The victim and the defendant were neighbors. The crime was not reported for several days. The victim told a story of forcible rape and the defendant told a story of a consensual intercourse. The State stacked the jury, as it acknowledged, with all whites. The State admitted it wanted an all-white jury in attempting to convict this defendant. I am of the opinion that the use of the peremptory challenge in this case by the State, under the admission of the State, has deprived this defendant of vital constitutional rights.
I respectfully dissent from the majority's affirmance of the conviction.
NOTES
[1] We are aware that a lower federal court has declared this provision unconstitutional; however, we are not bound by that decision and will await determination of this question by the United States Supreme Court. See Healy, et al. v. Edwards, et al., 363 F. Supp. 1110 (1973).