312 So.2d 318 (1975)
STATE of Louisiana
v.
Billy N. ELAM and Leon Wilbur Wiggins, Jr.
No. 55725.
Supreme Court of Louisiana.
April 24, 1975.
Rehearing Denied May 30, 1975.
*320 Murphy W. Bell, Director, R. Judge Eames, Trial Atty., Baton Rouge, for defendants-appellants.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Ossie Brown, Dist. Atty., Bryan Bush, Asst. Dist. Atty., for plaintiff-appellee.
BARHAM, Justice.
The defendants were convicted after a trial by jury of armed robbery, a violation of La.R.S. 14:64, and each was sentenced to ten years' imprisonment, without benefit of probation, parole or suspension of sentence. Twenty-one bills of exceptions were perfected but seven of these bills are considered abandoned, having been neither briefed nor argued. See, e. g., State v. Richmond, 284 So.2d 317 (La.1973). The defendants rely upon the remaining fourteen bills of exceptions for a reversal of their convictions and sentences.
The robbery of the manager of the Pak-a-Sak store located at 10755 Old Hammond Highway in East Baton Rouge Parish occurred on January 10, 1974. During that evening the defendants drove to the Pak-a-Sak location and defendant Wiggins exited the car, confronted the store manager, threatened to shoot him if he did not open the safe and relinquish its contents, took the contents of the safe and left the scene of the robbery. An officer conducting a surveillance noted that Wiggins reentered the car in which he had arrived and that the car drove away. Police officers stopped the vehicle within approximately four hundred yards of the Pak-a-Sak and arrested the defendants. Neither the victim nor anyone else who had viewed the defendant Wiggins at the time of the offense saw a gun or other weapon. No weapon was recovered at the time of arrest. This prosecution ensued.

BILLS OF EXCEPTIONS NOS. 2, 7, 8, and 9.
These bills of exceptions deal with the correctness of the references by the prosecutor and the trial court during voir dire to the content of this Court's opinion in State v. Levi, 259 La. 591, 250 So.2d 751 (1971). Bill of Exceptions No. 2 was reserved when the trial court refused to sustain the defendants' objection to an alleged misstatement of the law made by the prosecutor during the jury selection. The prosecutor stated: "* * * if you take the jurisprudence, the law as handed down by the Supreme Court, a dangerous weapon is not judged by whether it is dangerous in itself, but is judged by viewing the victim." Upon defendants' objection the prosecutor further stated that he was only reading from the Levi decision "* * * which said basically you don't look at it whether the gun is loaded or not loaded, or whether he had a gun or not, but you look at it in view of the victim himself, and whether or not the robbers themselves could have gotten killed by an innocent party, this type thing. * * *" In response to further protestations by the defendants, and notwithstanding the defendants' request that instructions related to the issue in controversy be deferred until after the selected jury took the case at the close of the presentation of evidence, the trial court read the Criminal Code definition of dangerous weapon from La.Crim.Code art. 2 and the statement in the Levi case that "* * * [a]n unloaded revolver in the *321 hands of a person intent on divesting another of his money is a dangerous weapon." Levi, supra, at 754.
The defendants argue that the prosecutor's reference to the Levi case, over their objection, gave credence and the illusion of authority to his misstatement of the law. While we in no way approve of the prosecution's erroneous inferences that a victim's subjective reactions are determinative of the issue of whether the robber committed the crime "while armed with a dangerous weapon," we note that the trial court, by way of resolving the dispute between the prosecutor and defense counsel, correctly stated the impact of the Levi decision. In view of this remedial action on the part of the trial court, we cannot say that the failure to sustain defendants' objection to the prosecutor's misstatement of the law constitutes reversible error.
Bills of Exceptions Nos. 7 and 8 were reserved when the trial court overruled defendants' objection made when the prosecutor stated, "* * * it is the law, * * * that armed robbery was designed to deter robberies fraught with danger of serious physical harm, not only to the victim, but to" and when the prosecutor again referred to the contents of the Levi opinion. Defendants argued that the prosecutor's statement "is not the law" but "an exposition of the law". The court overruled the defendants' objections and these bills of exceptions were reserved. The trial court thereafter required the prosecutor to preface his remarks to indicate that he was reading from a Louisiana Supreme Court decision.
It is self-evident that those statements which the prosecutor claimed to be "the law" were not law at all, but an exposition of the law proscribing armed robbery as set forth in the Levi opinion. The prosecutor's statements, however, correctly represented the exposition as set forth in Levi; for this reason, we cannot hold that the trial court erred in overruling the defendants' objections to these statements. We do not agree with the defendants' contention that they were prejudiced by the trial court's refusal to sustain their objections and disallow the prosecutor's statements.
Bill of Exceptions No. 9 was reserved when the trial court denied a defense motion for mistrial made when the prosecutor continued his references to the contents of the Levi opinion. The defendants argued that the prosecutor's continued reading of the Levi dicta, the voir dire inquiries based thereon, and the responses elicited clearly prejudiced their rights.
Our determinations on the merits of Bills 2, 7 and 8 are dispositive of this bill of exceptions. Having held that the trial court's failure to maintain the objections which formed the basis for these bills of exceptions was not reversible error, we determine that the trial court did not err in denying the mistrial motion. The motion does not set forth any of the grounds contained in the article of the Code of Criminal Procedure which mandates the granting of a mistrial motion. La.C.Cr.P. art. 770.
In addition to the prosecutor's repeated references to this Court's decision in State v. Levi, supra, a review of the court's charge to the jury reveals that the court gave special charges requested by the State which directly referred to the Levi decision. We note our disapproval of this practice, being of the opinion that the proper practice for a trial court is to prevent direct reference to a court's interpretation of the law by reference to named decisions and to refrain from such references when charging the jury on the law applicable to the case tried. A direct reference by name to an opinion by this Court, whether or not it accompanies a direct quotation deemed applicable by the trial court or the prosecutor, could conceivably cause the jury to give undue weight to those statements or portions of the charge identified with a court pronouncement. The argument on the law as well as *322 the charge of the law should be confined to the law and should not constitute an exposition on the interpretation of the law.

BILL OF EXCEPTIONS NO. 17
Bill of Exceptions No. 17 was reserved to the trial court's denial of defendants' motion for a directed verdict. Defendants argued that the State had presented "no evidence" that the perpetrator was armed with a dangerous weapon and that they were therefore entitled to a directed verdict of acquittal. Before defendants can prevail on this bill of exceptions complaining of the erroneous denial of their motion for a directed verdict, this Court must determine from a review of all of the evidence that there was a total lack of evidence, that is, no evidence, of the commission of the crime charged, or of an essential element thereof. See State v. Douglas, 278 So.2d 485 (La.1973).
During the State's case in chief the victim of the crime testified that during the course of the robbery the perpetrator repeatedly told him, "Don't make me shoot you" and "I'm going to shoot you, boy." The victim further testified that the perpetrator kept one hand inside his jacket pocket at all times during the course of the robbery and motioned with the hand in his pocket in a way which indicated that he had a weapon in his pocket. We consider this testimony some evidence from which the jury might infer that the perpetrator was armed with a dangerous weapon.[*] The mere facts that no weapon was actually seen by the victim or any other witness and that no gun was recovered by the law enforcement officers who arrested the defendants after pursuing them for approximately four hundred yards does not preclude the defendants' convictions for armed robbery, considering the victim's testimony relating Wiggins' actions and his threats.
This bill of exceptions is without merit.

BILL OF EXCEPTIONS NO. 1
The defendants reserved this bill of exceptions when the trial court declined to furnish for the record, by memorandum or other means, the bases upon which the court excused twenty prospective jurors prior to the commencement of voir dire. Defendants argue that the trial court's failure to assign in the record his reasons for excusing members of the petit jury venire denies them due process of law as guaranteed by the United States and Louisiana Constitutions. Notwithstanding this serious allegation, defendants fail to make specific allegations in support of their claim.
La.C.Cr.P. art. 783 provides, in pertinent part:
"The court may excuse a member of the petit jury venire at any time prior to the time he is sworn as a juror to try a particular case. * * *"
In State v. Jack, 285 So.2d 204 (La. 1973), the Court noted that the trial court may, in its discretion, excuse prospective jurors in advance of time of trial; an exercise of that discretion will not be disturbed unless there is a showing of fraud or collusion which results in prejudice to the defendant. Absent a showing of fraud, collusion and ultimate prejudice to the defendants, we cannot say that the trial court erred in excusing the prospective jurors. We are therefore constrained to hold that the trial court did not commit reversible error in refusing to state for the record the reasons why the various jurors were excused.

BILL OF EXCEPTIONS NO. 6
During the voir dire examination of prospective jurors, the defendants sought to inquire of a prospective juror whether he believed former President Nixon was innocent until proven guilty. The State objected, arguing that the question *323 was irrelevant, and the defendants reserved this bill of exceptions when the trial court sustained the State's objection.
The defendants rely on State v. Jones, 282 So.2d 422 (La. 1973); in that case the Court reestablished the requirement under our law that wide latitude be allowed in the conduct of voir dire examination. In Jones, we reversed the defendant's conviction because the trial court severely curtailed voir dire examination and refused to allow defense counsel to ask a prospective juror who had previously served on a grand jury whether he believed that a person was guilty if indicted by the grand jury. (Jones, charged with murder, had been so indicted.)
While we reaffirm our decision in Jones, we hold that the trial court did not err in disallowing a question which sought the prospective juror's belief about former President Nixon's guilt or innocence. We note that the trial court allowed defense counsel to question other prospective jurors regarding their willingness and ability to accord the defendants the presumption of innocence. There is no indication that a similar relevant inquiry of this particular prospective juror would have been disallowed. This bill of exceptions is without merit.

BILL OF EXCEPTIONS NO. 10
During voir dire examination by the prosecutor, a prospective juror specially requested permission to speak and expressed his belief that he could not vote to take a man's freedom "regardless of the circumstances."
The following colloquy between the prospective juror and the prosecutor took place:
"Q You don't think you could vote no matter what the evidence or anything else?
"A I don't believe I could.
"Q All right, sir. Now, this is your feeling? You have a right to, but if you're accepted as a juror you know that you have to take the instruction by the Court as to what the law is, and vote to convict ifit's one of the prerequisites of being a juror.
"A Right.
"Q You don't think you can do that?
"A No, I don't believe I could."
At this point the prosecutor challenged the prospective juror for cause; the court granted the challenge even though the defendants sought to question the prospective juror before the court ruled on the prosecutor's challenge.
Defendants base their argument on the right granted them under La.C.Cr.P. art. 786 to examine the prospective jurors. However, we are convinced that the above-quoted colloquy clearly establishes the prospective juror's inability to accept the law as given to him by the court and his inability to impartially judge the defendants' guilt or innocence. Under La.C.Cr.P. art. 797 adequate basis for a challenge for cause existed. Under the circumstances, the court did not err in refusing defendants the right to question the prospective juror before excusing him.

BILLS OF EXCEPTIONS NOS. 12, 14, 18, 19, 20 and 21
These bills of exceptions present two issues. Bills Nos. 12, 14, 20 and 21 raise the question of the admissibility of evidence of the defendants' actions earlier on the evening of the armed robbery. At the time of their objections and their motion for a mistrial, the defendants based their objections on State v. Prieur, 277 So.2d 126 (La.1973) and complained of the State's failure to provide the notice which is required by that decision.
The evidence of which the defendants complain concerns testimony and prosecutorial reference to their movements for *324 about a two-hour time period preceding the armed robbery. At about 9:00 P.M. on the evening of the robbery the employee of a Pak-a-Sak store located on Cedarcrest Drive telephoned an off-duty law enforcement officer who lived in the apartment complex across the street from the store. As a result of this telephone call, the officer proceeded to the store and observed a white 1963 Ford repeatedly pass the location at a slow rate of speed. The officer testified that each time the vehicle passed the store the two occupants, observed to be white males, looked in the direction of the store. According to the officer's testimony this activity continued for approximately an hour and a half; at approximately 10:30 P.M. the officer observed the car, with its lights out, drive down a street alongside the store and stop. The passenger left the vehicle and the officer noted that he had his right hand in the pocket of his jacket. The officer observed that the man walked up to the store but did not enter, since the store was locked. The testimony revealed that the man returned to the car and that the car drove off when a vehicle containing a number of young people entered the store's parking area.
The police officer further testified that he followed the automobile and observed that it entered the parking lot of another convenience store, and parked in such a way that the rear of the car faced the front of the store. The officer observed that the two occupants turned in their seats and watched in the direction of the store. The officer testified that he then radioed the sheriff's office, relating the incidents he observed and relaying the description of the car and its license number, which he had earlier observed. According to his testimony, the officer next observed the car and its occupants at the location of the robbery at issue in this case.
During opening statement, during the trial and during closing argument the prosecutor referred to these earlier events and elicited testimony concerning the defendants' actions. To those references the defendants reserved the four bills of exceptions we consider.
We do not agree that the State's intention to introduce evidence concerning the defendants' actions preceding the robbery required the notice mandated by our decision in State v. Prieur, supra. The Prieur notice requirement is, by the opinion itself, confined to cases where the State intends to offer evidence of "other criminal offenses". As we review the record, we determine that this evidence of the events which preceded the robbery does not constitute evidence of "other criminal offenses" and, thus, did not require that the State give "Prieur notice".
It is equally clear from the record, however, that this evidence was introduced by the State in an attempt to establish intent and system. The defendants entered dual pleas of "not guilty" and "not guilty by reason of insanity" to the armed robbery charge. The pre-trial proceedings pursuant to the invocation of insanity proceedings revealed that the defendants intended to attempt to avoid criminal responsibility by presentation of an intoxication defense. It is obvious that the State presented evidence of these apparently considered and sober actions immediately prior to the commission of the crime in order to undermine the defense presented. In fact, the record reveals that the State elicited testimony from some of its witnesses which established that the driver of the car adequately controlled his vehicle and that the defendant Wiggins did not move or act in a manner which indicated intoxication.
In spite of our determination that these events do not constitute evidence of "other criminal offenses" we note that an application of the balancing test set forth in State v. Moore, 278 So.2d 781 (La. 1973), which requires that probative value be weighed against prejudicial effect, would not dictate exclusion of this evidence. The strong relevance of the evidence is plain when it is considered in light of the defense anticipated and actually *325 presented. We determine, therefore, that the admission of evidence of defendants' actions prior to the commission of the crime and the trial court's refusal to sustain defendants' objections to the prosecutor's references to these actions was not error. These bills of exceptions are without merit.
On direct examination, the defendant Wiggins testified that he had five prior convictions, but he was not asked, and did not specify, the exact nature of the crimes. The State sought this information during cross-examination and Bills Nos. 18 and 19 were reserved when the trial court overruled defendants' objections thereto. Defendants argue that the prosecutor's inquiry exceeded the limits set forth in our statutes and that the trial court's refusal to sustain their objections to the inquiry was error.
In State v. Jackson, 307 So.2d 604 (La. 1975), a majority of this Court determined that there was no error in the cross-examination of a witness which sought to elicit details of an offense for which the witness was convicted for the purpose of proving the actual nature of the crime. The rationale of the Jackson opinion mandates a holding that these defendants' bills of exceptions lack merit.
For all of the foregoing reasons, the defendants' convictions and sentences are affirmed.
SUMMERS, J., concurs.
DIXON, J., concurs with reasons.
DIXON, Justice (concurring).
I concur.
I am in agreement with the conclusion and content of the opinion except that I cannot agree with the proposition that it might not be proper to refer, in the charge, to decisions of this court by name or to quote from decisions of this court which are otherwise correct.
NOTES
[*] This holding does not make any extension of Levi nor do we hold that a "hand in a pocket" is a dangerous weapon.