998 So.2d 765 (2008)
STATE of Louisiana, Appellee
v.
Akintunde Charmez COLLINS, Appellant.
Nos. 43,645-KA, 43,646-KA.
Court of Appeal of Louisiana, Second Circuit.
October 29, 2008.
*768 Louisiana Appellate Project, by Carey J. Elllis, III, for Defendant/Appellant, Akintunde Charmez Collins.
Akintunde Charmez Collins, pro se.
J. Schuyler Marvin, District Attorney, John M. Lawrence, Assistant District Attorney, for Appellee.
Before BROWN, CARAWAY & PEATROSS, JJ.
PEATROSS, J.
Defendant, Akintunde Charmez Collins, was convicted of Possession of a Schedule II Controlled Dangerous Substance, namely Methamphetamine; Possession of a Schedule I Controlled Dangerous Substance, namely Methylenedioxymethamphetamine (MDMA); and Possession of a Schedule II Controlled Dangerous Substance, namely Cocaine. He was sentenced to 3 years at hard *769 labor for the Possession of Methamphetamine conviction; 5 years at hard labor for the Possession of MDMA conviction; and, for the Possession of Cocaine conviction, 15 years at hard labor; however, all but the first 10 years are suspended and to be served without benefit of parole, probation or suspension of sentence, with 5 years' probation and a $100,000 fine. All sentences are to be served concurrently. Defendant appeals. For the reasons stated below, we affirm the convictions and sentences of Defendant.

FACTS
On the morning of October 15, 2005, Louisiana State Trooper Shane Sears stopped a car driven by Khalfani Mustafaa Kamau,[1] in which Defendant was a passenger, on the side of Interstate 20. Trooper Sears had been assisting another state trooper, James Nash, at a separate traffic stop when he witnessed a burgundy Ford Taurus pass them without changing lanes to travel in the lane farthest from the stopped emergency vehicles. The failure to move into the inside lane away from a stopped emergency vehicle, if possible, is a traffic violation of R.S. 32:125(B).
Trooper Sears testified that, since the prior stop was coming to an end, he chose to pursue the burgundy car with the intent of pulling the car over for failure to yield for an emergency vehicle. Trooper Sears followed the vehicle and clocked it with his radar as traveling at 78 miles an hour in a 70-mile an hour speed zone. After stopping the vehicle, Trooper Sears asked the driver, Kamau, to step out of the vehicle.[2] Trooper Sears explained that the proper procedure during a traffic stop is to speak with drivers behind the stopped car and off the shoulder of the road as a safety precaution from the interstate traffic.
Trooper Sears observed Kamau's behavior to be aggressive: "... [H]e, in a confrontational-type manner, asked me what he was stepping out of the car for." Trooper Sears further described Kamau's behavior as "confrontational. He seemed agitated. He was what we call noncompliant because I asked him to step inover into the grass several times and he wouldn't do it."
Trooper Sears discovered that the vehicle was a rental car rented to a third party who had named Kamau as a driver of the vehicle. As a result of a driver's license check on both Kamau and Defendant, Trooper Sears discovered several names and social security numbers connected to both Kamau and Defendant.
When asked by Trooper Sears what their travel plans were, Kamau told him that they had been headed to Atlanta, Georgia. By that time, Deputy James McLamb, a Caddo Parish Sheriff's deputy, had arrived on the scene and had begun interviewing Defendant. Deputy McLamb had been participating in the prior stop along with Trooper Sears. Deputy McLamb further described Kamau's demeanor as:
I could see the guy was just anxious, a littlekind of flexing his fists, just there wasthere was something there. I didn't hear the conversation between them. I could just tell by eyesight that *770 something wasn't quite right, so Ithat's the reason I stayed instead of going back and getting in my car.
* * *
He justhe wasn't quite listening. He wouldhe would walk back towards the car. He was moving around. He was flexing his fists. Further into the conversation when I was talking to him, he would glance down at my weapon. He justjustIt's not exactly one thing. It's a lot of combinations of things that he was doing.
Trooper Sears discovered, during his driver's license search, that Defendant had an outstanding warrant in Texas and, at that time, took him into custody and placed Defendant in the back of his patrol car. Trooper Sears returned Kamau's driver's license and vehicle documents to him without issuing him a citation, but continued the traffic stop while waiting on confirmation from Texas that the outstanding warrant for Defendant was valid.
While waiting for information on the outstanding warrant, Trooper Sears asked Kamau for consent to search the vehicle. Kamau initially agreed. Deputy McLamb conducted the search of the vehicle and found a screwdriver in the glove box which he thought looked out of place in a rental vehicle. He then retrieved his K-9 from his vehicle and conducted an open-air sniff around the vehicle. At that point, Kamau protested the search, but Deputy McLamb continued to circle the vehicle with the dog. Deputy McLamb subsequently informed Trooper Sears that the K-9 had alerted to the presence of narcotics in the vehicle and a more in-depth search was necessary. The K-9 appeared to alert on the trunk and, later on, on the driver's side at the front of the vehicle. Deputy McLamb looked more closely at an area near where the windshield met the vehicle body where the dog had seemed most focused. At that point, he identified an area that looked like a portion of the plastic had been removed and replaced. When he pried the plastic back off, he was able to locate the hiding place of the narcotics.
Trooper Sears described the location where the narcotics were located as:
[T]he narcotics were located in the lower leftwhat we call the firewall, which is below the windshield, that plasticpiece of plastic that touches the windshield to the motor department [sic] where your windshield wipers are, it wasthe plastic had been pried open and the narcotics were bundled up in duct tape and dryer sheets stuffed down in a natural void below the windshield wipers in the firewall.
The officers also found a receipt in the car for a box of Claritin sinus medication and another receipt for a box of Bounce dryer sheets purchased on the same night within five minutes of one another from the same CVS Pharmacy in Humble, Texas. The officers located cocaine and Ecstasy tablets in the firewall of the vehicle.
After the search was conducted and the narcotics were located, Defendant and Kamau were transported back to Troop G. Trooper Jason Parker testified that he had taken possession of the narcotics once the vehicle and its occupants were transported to Troop G and he maintained custody of them until they were transferred to the Shreveport Field Office. The narcotics were delivered by Trooper Parker to the Crime Lab on October 17, 2005, and picked up from the evidence custodian the day before his testimony on October 25, 2007. Trooper Parker could not testify from personal knowledge who had transferred them from the Crime Lab to the evidence custodian or when that transfer had occurred.
*771 Defendant and Kamau were tried together and, after waiving any conflict problems, were represented by the same counsel. They separately appealed. While their appeals were consolidated at this court for purposes of consideration, we issue a separate opinion regarding the appeal of Kamau.
Prior to trial, defense counsel filed a motion to suppress seeking to keep any evidence obtained as a result of the traffic stop from being introduced (in this case, all the evidence). The trial court denied the motion to suppress. At trial, defense counsel argued that the State failed to establish a proper chain of custody for the narcotics, so they should not be permitted into evidence. The trial court disagreed and found that the evidence should be admitted since it was "more probable than not that these drugs are related to this case."
After the close of evidence and jury deliberation, the jury returned verdicts finding both men of Guilty of Possession of a Schedule II Controlled Dangerous Substance, namely over 200 grams of Cocaine; Guilty of Possession of a Schedule II Controlled Dangerous Substance, namely Methamphetamine; Guilty of Possession of a Schedule I Controlled Dangerous Substance, namely Methylenedioxymethamphetamine (MDMA); and Not Guilty of Conspiring to Distribute Schedule I and Schedule II Controlled Dangerous Substances, namely Cocaine, Methamphetamine, and Methylenedioxymethamphetamine (MDMA).
Defendant was sentenced to 3 years' imprisonment at hard labor for possession of methamphetamine; 5 years' imprisonment at hard labor for possession of methylenedioxymethamphetamine (MDMA); and, for possession of cocaine, 15 years at hard labor with all but the first 10 years suspended and to be served without benefit of parole, probation or suspension of sentence, with 5 years' probation upon release and a $100,000 fine.

DISCUSSION

Sufficiency of the Evidence
Defendant argues, in his pro se brief, that the evidence was insufficient to show that he, as a passenger in the car, knowingly possessed the narcotics found in the car.
When issues are raised on appeal, both as to the sufficiency of the evidence and as to one or more trial errors, the reviewing court should first determine the sufficiency of the evidence. The reason for reviewing sufficiency first is that the accused may be entitled to an acquittal under Hudson v. Louisiana, 450 U.S. 40, 101 S.Ct. 970, 67 L.Ed.2d 30 (1981), if a rational trier of fact, viewing the evidence in accord with Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), in the light most favorable to the prosecution, could not reasonably conclude that all of the elements of the offense have been proved beyond a reasonable doubt. State v. Hearold, 603 So.2d 731 (La.1992); State v. Bosley, 29,253 (La.App. 2d Cir.4/2/97), 691 So.2d 347, writ denied, 97-1203 (La.10/17/97), 701 So.2d 1333.
The Jackson standard is applicable in cases involving both direct and circumstantial evidence. An appellate court reviewing the sufficiency of evidence in such cases must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution. When the direct evidence is thus viewed, the facts established by the direct evidence and inferred from the circumstances established by that evidence must be sufficient for a rational trier of fact to conclude beyond a reasonable doubt that the defendant was guilty of every essential element *772 of the crime. State v. Sutton, 436 So.2d 471 (La.1983); State v. Parker, 42,311 (La. App. 2d Cir.8/15/07), 963 So.2d 497, writ denied, 07-2053 (La.3/7/08), 977 So.2d 896; State v. Owens, 30,903 (La.App. 2d Cir.9/25/98), 719 So.2d 610, writ denied, 98-2723 (La.2/5/99), 737 So.2d 747.
When circumstantial evidence forms the basis for the conviction, such evidence must exclude every reasonable hypothesis of innocence. La. R.S. 15:438. The court does not determine whether another possible hypothesis suggested by the defendant could afford an exculpatory explanation of the events; rather, when evaluating the evidence in the light most favorable to the prosecution, the court determines whether the possible alternative hypothesis is sufficiently reasonable that a rational juror could not have found proof of guilt beyond a reasonable doubt under Jackson v. Virginia. State v. Mitchell, 99-3342 (La.10/17/00), 772 So.2d 78; State v. Davis, 92-1623 (La.5/23/94), 637 So.2d 1012, cert. denied, 513 U.S. 975, 115 S.Ct. 450, 130 L.Ed.2d 359 (1994); State v. Owens, supra.
Circumstantial evidence is defined as evidence of facts or circumstances from which one might infer or conclude the existence of other connected facts. Circumstantial evidence consists of proof of collateral facts and circumstances from which the existence of the main fact may be inferred according to reason and common experience. State v. Lilly, 468 So.2d 1154 (La.1985); State v. Mims, 39,757 (La. App. 2d Cir.6/29/05), 907 So.2d 237; State v. Turner, 591 So.2d 391 (La.App. 2d Cir. 1991), writ denied, 597 So.2d 1027 (La. 1992).
To support a conviction for possession of a controlled dangerous substance, the State must prove that the defendant was in possession of the illegal drug and that he knowingly possessed the drug. State v. White, 37,261 (La.App. 2d Cir.6/25/03), 850 So.2d 987. Possession of narcotic drugs can be established by actual physical possession or by constructive possession. State v. Major, 03-3522 (La. 12/1/04), 888 So.2d 798; State v. Trahan, 425 So.2d 1222 (La.1983). A person can be found to be in constructive possession of a controlled substance if the State can establish that he had dominion and control over the contraband, even in the absence of physical possession. State v. Harris, 94-0970 (La.12/8/94), 647 So.2d 337. A determination of whether there is sufficient "possession" of a drug to convict depends on the particular facts of each case. State v. Trahan, supra.
Although mere presence in an area where drugs are located or mere association with one possessing drugs does not constitute constructive possession, this court has acknowledged several factors to be considered in determining whether a defendant exercised sufficient control and dominion to establish constructive possession, including: (1) his knowledge that drugs were in the area; (2) his relationship with the person, if any, found to be in actual possession; (3) his access to the area where the drugs were found; (4) evidence of recent drug consumption; and (5) his physical proximity to drugs. State v. Major, supra. While mere presence in the area where narcotics are discovered is insufficient to support a finding of possession, the fact finder may draw reasonable inferences based upon the evidence presented at trial. Id.
Defendant argues that the evidence presented is focused on Kamau and does not establish beyond a reasonable doubt that he knew the drugs were in the car. We disagree. Trooper Sears testified that Kamau told him that both Defendant and Kamau were from Houston and going to *773 Atlanta. Further, the officers found in the vehicle, in which Defendant was a passenger, two receipts from a drug store in a town just outside Houston. The first receipt was for a box a Claritin allergy medicine. The second receipt showed that minutes later a box of dryer sheets was purchased. The Claritin was found in the vehicle and Trooper Sears testified that Kamua stated he was taking the sinus medicine, but he did not know who had made the purchases. When the narcotics were discovered, they had been wrapped in dryer sheets before being wrapped in duct tape and hidden in the firewall.
The jury could have reasonably concluded that Defendant and Kamau purchased the dryer sheets together, then used them in attempting to conceal the narcotics. The testimony reflects that Defendant and Kamau started together from Houston, and nothing in the record shows that Defendant joined the trip at some later point. We find, therefore, no merit in this assignment of error.

Vehicle Search
Defendant contends that the trial court erred in denying his motion to suppress. He disputes the validity of the traffic stop and argues that the length of his detention following the traffic stop was unconstitutional.
The State bears the burden of proof when a defendant files a motion to suppress evidence obtained without a warrant. La. C. Cr. P. art. 703(D). The entire record is reviewable for determining the correctness of a ruling on a motion to suppress. State v. Young, 39,546 (La.App. 2d Cir.3/2/05), 895 So.2d 753. A trial court's denial of a motion to suppress is afforded great weight and will not be set aside unless a preponderance of the evidence clearly favors suppression. State v. White, 39,681 (La.App. 2d Cir.5/11/05), 903 So.2d 580; State v. Normandin, 32,927 (La.App. 2d Cir.12/22/99), 750 So.2d 321, writ denied, 00-0202 (La.9/29/00), 769 So.2d 550.
The authority and limits of the Fourth Amendment apply to investigative stops of vehicles. United States v. Sharpe, 470 U.S. 675, 105 S.Ct. 1568, 84 L.Ed.2d 605 (1985); United States v. Hensley, 469 U.S. 221, 105 S.Ct. 675, 83 L.Ed.2d 604 (1985). The stopping of a vehicle and the detention of its occupants is a seizure within the meaning of the Fourth Amendment. U.S. v. Shabazz, 993 F.2d 431 (5th Cir. 1993). The standard for evaluating a challenge to a routine warrantless stop for violating traffic laws is the two-step formulation articulated in Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); State v. Sims, 40,300 (La.App. 2d Cir.10/26/05), 914 So.2d 594. The court must determine "whether the officer's action was justified at its inception, and whether it was reasonably related in scope to the circumstances which justified the interference in the first place." U.S. v. Shabazz, supra, quoting Terry v. Ohio, supra.
For a traffic stop to be justified at its inception, an officer must have an objectively reasonable suspicion that some sort of illegal activity, such as a traffic violation, occurred or is about to occur, before stopping the vehicle. United States v. Sharpe, supra; State v. Sims, supra. When determining whether an investigatory stop was justified by reasonable suspicion, a reviewing court must consider the totality of the circumstances, giving deference to the inferences and deductions of a trained police officer. State v. Huntley, 97-0965 (La.3/13/98), 708 So.2d 1048. The determination of reasonable suspicion for an investigatory stop, or probable cause for arrest, does not rest on *774 the officer's subjective beliefs or attitudes, but turns on a completely objective evaluation of all the circumstances known to the officer at the time of the challenged action. State v. Landry, 98-0188 (La. 1/20/99), 729 So.2d 1019; State v. Arnold, 34,194 (La.App. 2d Cir.12/6/00), 779 So.2d 840. When an officer observes what he objectively believes is a traffic offense, the decision to stop the vehicle is reasonable. Whren v. U.S., 517 U.S. 806, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996).
In the case sub judice, both Trooper Sears and Deputy McLamb testified that they were concluding a previous traffic stop when they observed a vehicle matching the description in which Defendant was a passenger driving in the lane closest to them. They both testified that the vehicle was very close to the fog line, i.e., the white line that divides the shoulder from the driving lane. Video from another patrol car of another officer involved with the prior traffic stop shows a car similar in appearance to the one in which Defendant was a passenger drive past without moving into the far lane. La. R.S. 32:125(B) requires that, if possible, a vehicle move into the lane away from an emergency vehicle stopped on the side of the road.[3] In addition, Trooper Sears testified that, using his radar gun, he observed Kamau driving 78 miles per hour when the posted speed limit was 70 miles per hour. We find, therefore, that the initial stop was proper.
We, next, turn our attention to the length of the detention and the propriety of the search. During the detention of an alleged violator of any provision of the motor vehicle laws of this state, an officer may not detain a motorist for a period of time longer than reasonably necessary to complete the investigation of the violation and the issuance of a citation for the violation, absent reasonable suspicion of additional criminal activity. La. C. Cr. P. art. 215.1(D). La C. Cr. P. art. 215.1(D) does not preclude a police officer, who may lack reasonable suspicion of other criminal activity, from engaging a motorist in conversation while investigating a routine traffic violation. State v. Cowan, 99-2888 (La.6/16/00), 763 So.2d 583.
The police may search an automobile and the containers within it where they have probable cause to believe contraband or evidence is contained. See, State v. Cowan, supra; U.S. v. Jackson, 120 F.3d 1226 (11th Cir.1997); U.S. v. Torres, 32 F.3d 225 (7th Cir.1994), cert. denied, 513 U.S. 1116, 115 S.Ct. 912, 130 L.Ed.2d 794 (1995). Additionally, a canine search is not a "search" within the meaning of the Fourth Amendment. U.S. v. Place, 462 U.S. 696, 103 S.Ct. 2637, 77 L.Ed.2d 110 (1983); State v. Gant, 93-2895 (La.5/20/94), 637 So.2d 396; State v. Paggett, 28,843 (La.App. 2d Cir.12/11/96), 684 So.2d 1072. Once a dog alerts on the vehicle, police officers have probable cause to search the vehicle without first obtaining a warrant. See, Maryland v. Dyson, 527 U.S. 465, 119 S.Ct. 2013, 144 L.Ed.2d 442 (1999); U.S. v. Ross, 456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982).
*775 In the case sub judice, Deputy McLamb did not need probable cause, or even reasonable suspicion, to retrieve his K-9 partner for an open-air search of the vehicle. We express no opinion, therefore, as to whether the suspicious screwdriver or Kamau's demeanor, along with the entirety of the evidence adduced at trial, would amount to probable cause to search the vehicle without consent. Once the K-9 alerted to the presence of drugs in the vehicle, the officers had probable cause to search the vehicle.
Concerning the length of the detention, when the driver's license search on Defendant showed an outstanding warrant, the officers were reasonable in continuing to detain Defendant, Kamau and the vehicle until the validity of the warrant could be confirmed. It was during this time that the search was initially conducted with the consent of Kamau. The K-9 was used relatively soon after the search was begun and quickly alerted for the presence of contraband. Although the search did take nearly an hour until the contraband was discovered, probable cause that the vehicle contained contraband developed rather quickly and justified the continued detention and search. We, therefore, find that this assignment of error is without merit.

Chain of Custody
Defendant further argues that the trial court erred in admitting the narcotics into evidence because the State failed to properly establish the chain of custody. Defendant also argues that, because Trooper Parker could not, through personal knowledge, account for the location of the narcotics evidence from October 17, 2005, to October 23, 2007, it is inadmissible.
To admit demonstrative evidence at trial, an object must be identified, either by testimony that the object is related to the case or by the chain of custody from the time of seizure until presentation at trial. For the admission of demonstrative evidence, it suffices if the foundation laid establishes that it is more probable than not that the object is relevant to the case. State v. Toney, 26,711 (La.App. 2d Cir.3/1/95), 651 So.2d 387; State v. Daniels, 614 So.2d 97 (La.App. 2d Cir. 1993), writ denied, 619 So.2d 573 (La. 1993); State v. Caston, 583 So.2d 42 (La. App. 2d Cir. 1991), writ denied, 585 So.2d 575 (La.1991).
It is not necessary that the evidence as to custody eliminate all possibilities that the object has been altered. The State need only establish by a preponderance of the evidence that the object is the one connected with the case. State v. Toney, supra. A defect in the chain of custody goes to the weight of the evidence rather than to its admissibility. State v. Jackson, 629 So.2d 1374 (La.App. 2d Cir. 1993), writ denied, 94-0201 (La.5/6/94), 637 So.2d 1046. Also see State v. Burd, 40,480 (La.App.2d Cir. 1/27/06), 921 So.2d 219, writ denied, 06-1083 (La.11/9/06), 941 So.2d 35.
In the case sub judice, the State showed a chain of custody that commenced with the officer who discovered the evidence at the traffic stop and was unbroken to the point when the evidence was transported to the crime lab on October 17, 2005. The State then established that the evidence was retrieved on October 24, 2007, at the field office for trial. This is not a fatal error for the introduction of the evidence. The State need only establish by a preponderance of the evidence that the object is the one connected with the case. State v. Toney, supra. Trooper Parker testified that the evidence presented at trial was the same evidence that he delivered to the crime lab two years previously. *776 The law merely requires that the object be identified as related to the case or through chain of custody. The State has met that burden here. Further, defects in the chain of custody go to the weight of the evidence, not its admissibility. State v. Jackson, supra. We find, therefore, that this assignment is without merit.

Voir Dire
In his pro se brief, Defendant argues that he was denied a fair trial because the initial screening of the petit jury venire was done outside the presence of Defendant and in the presence of the prosecution. He argues that, through this process, the prosecution was allowed ex parte communications with the jury. Defendant filed a motion for mistrial on this basis, which was denied by the trial court.
La. C. Cr. P. art. 783 allows the trial court to excuse a member of the petit jury venire at any time prior to the time he is sworn for a particular trial. The article provides that:
If jury service, whether criminal or civil, would result in undue hardship or extreme inconvenience, the district court may excuse a person from such service either prior to or after his selection for the general venire, jury pool, or jury wheel. The court may take such action on its own initiative or on recommendation of an official or employee designated by the court.
La. C. Cr. P. art. 786 allows, however, that the court, the state, and the defendant shall have the right to examine prospective jurors.
The Louisiana Supreme Court, in State v. Gomez, 319 So.2d 424 (La.1975), addresses the interplay of these articles.
The apparent conflict between these two Code articles has been resolved by the jurisprudence by allowing the trial judge, within his sound discretion, to release prospective jurors In [sic] advance of voir dire examination; the trial judge's decision in this matter is not disturbed unless there is a showing of fraud or collusion resulting in prejudice to the accused.
Id., citing, State v. Witherspoon, 292 So.2d 499 (La.1974); State v. Jack, 285 So.2d 204 (La.1973); State v. Williams, 258 La. 801, 248 So.2d 295 (1971).
Defendant merely alleges that, because he was not present during the time when these jurors were initially excused, the trial court committed reversible error. As stated, it is within the discretion of the trial court to excuse potential jurors prior to examination by the state and defense unless collusion and prejudice can be shown. The prosecution was present in the courtroom at the initial interview by the court, but did not take part in the process. In addition, the trial court noted that defense counsel chose not to be in the courtroom when the jurors were being screened.
We find, therefore, that this assignment is without merit.

Rule of Sequestration
Defendant submits, in his pro se brief, that the trial court erred in allowing the testimony of Troopers Sears and Nash at the hearing on the motion to suppress based on an arguable violation of the rule of sequestration. During the hearing, Trooper Nash testified that after he had testified the previous day, he spoke with the prosecution concerning the case in the presence of other witness, namely Trooper Sears and Deputy McLamb. The testimony of Trooper Nash was that he asked the prosecution how his testimony was, to which the prosecution stated that he did all right. Defense counsel asked for all of the testimony of Trooper Nash and Trooper *777 Sears to be excluded from consideration at the hearing. The trial court found that there was no discussion of the facts of the case and allowed testimony to be considered.
La. C.E. art. 615 provides, in pertinent part:
On its own motion the court may, and on request of a party the court shall, order that the witnesses be excluded from the courtroom or from a place where they can see or hear the proceedings, and refrain from discussing the facts of the case with anyone other than counsel in the case. In the interests of justice, the court may exempt any witness from its order of exclusion.
From our review of the record, we are unable to find that the trial court erred in concluding that no violation of the rule had occurred. The exchange between the witness and the prosecutor was minimal. While we instruct all parties and witnesses to respect the rule with utmost diligence, we cannot find that such a minor exchange amounts to a violation of the rule. We find, therefore, that this assignment of error is without merit.

CONCLUSION
For the foregoing reasons, we affirm the convictions and sentences of Defendant, Akintunde Charmez Collins.
CONVICTIONS AND SENTENCES AFFIRMED.
NOTES
[1] Kamau's driver's license used the name Mustafaa Kamau Khalfani. Related to this incident, he was charged under the name Khalfani, but, in open court, stated that his proper name was Khalfani Mustafaa Kamau. That surname Kamau was used by the trial court and will be used by this court.
[2] Trooper Sears' vehicle was equipped with a video and audio recorder and video footage was taken of the entire stop. The video was entered into evidence and played for the jury.
[3] La. R.S. 32:125(B) provides that:

B. When any vehicle making use of any visual signals as authorized by law, including the display of alternately flashing amber or yellow warning lights is parked on or near the highway, the driver of every other vehicle shall:
(1) When driving on an interstate highway or other highway with two or more lanes traveling in the same direction, yield the right-of-way by making a lane change into a lane not adjacent to the parked vehicle if possible with due regard to safety and traffic conditions. If a lane change is not possible, the driver shall slow to a reasonably safe speed.