## NOT DESIGNATED FOR PUBLICATION

**STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT**

**10-361 consolidated with 10-362**

**STATE OF LOUISIANA**

**VERSUS**

**CLYDE A. BOWENS**

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
TWENTY-EIGHTH JUDICIAL DISTRICT COURT,
PARISH OF LASALLE, NO. 84,995 c/w 84,996
HONORABLE J. CHRISTOPHER PETERS, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

**J. DAVID PAINTER
JUDGE**

\*\*\*\*\*\*\*\*\*\*

Court composed of Oswald A. Decuir, J. David Painter, and Shannon J. Gremillion, Judges.

**AFFIRMED.**

**Steven P. Kendrick, Assistant District Attorney**
**Twenty-Eighth Judicial District**
**P.O. Box 1940**
**Jena, LA 71342**
**Counsel for Appellee:**
    **State of Louisiana**

**Glenn G. Cortello, Attorney at Law**
**201 Johnston Street, Suite 400**
**Alexandria, LA 71301**
**Counsel for Defendant-Appellant:**
    **Clyde A. Bowens**

**PAINTER, Judge.**

Defendant, Clyde A. Bowens, appeals his conviction and sentence on the charges of possession of marijuana and possession with intent to distribute cocaine. For the following reasons, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Defendant was charged by bill of information on May 20, 2008, with possession with intent to distribute marijuana, in violation of La.R.S. 40:966. On the same date, he was charged by bill of information with possession with intent to distribute cocaine, in violation of La.R.S. 40:967. Defendant entered pleas of not guilty on June 30, 2008.

Trial by jury commenced on August 24, 2009. The following day, the jury returned its verdicts of guilty of possession with intent to distribute cocaine and the responsive verdict of possession of marijuana. On November 3, 2009, Defendant was sentenced to serve twenty-five years at hard labor for possession with intent to distribute cocaine, with two years of the sentence to be served without benefit of probation, parole, or suspension of sentence. He was also sentenced to serve six months in parish jail for possession of marijuana. A Motion to Reconsider was filed on November 30, 2009, and was denied on January 5, 2010.

Defendant is now before this court asserting the following six counsel-filed assignments of error: 1) the jury erred in finding him guilty of possession of cocaine with intent to distribute; 2) the trial court erred in admitting into evidence the marijuana, cocaine, and empty plastic baggies when the evidence was not properly accounted for and some of the evidence logged in was missing, lost, mishandled, and not identified; 3) the trial court erred in allowing the State to recall Deputy Groh, who changed his testimony concerning where the baggies were located and found; 4) the trial court erred in denying his Motion to Suppress physical evidence; 5) the trial court erred in sentencing him to twenty-five years at hard labor; and 6) the trial court erred in denying his Motion to Reconsider his sentence of possession with intent to distribute cocaine.

Defendant also filed a *pro se* brief asserting the following assignments of error: 1) Deputy Groh should have been impeached for bias and interest according to his testimony; 2) the trial court allowed Deputy Groh back into court and to change his testimony concerning the baggies at issue, small and large; 3) baggies, small or large, should have been excluded as evidence because of inconsistencies and controversies concerning the baggies; 4) the trial court erred in allowing Deputy Groh to repudiate his former testimony; 5) the trial court erred in permitting Chief Deputy Husbands to testify as an expert witness that Defendant possessed cocaine with the intent to distribute.

For the following reasons, we affirm Defendant's convictions and sentences.

## DISCUSSION

### *Errors Patent*

In accordance with La.Code Crim.P. art. 920, all appeals are reviewed for errors patent on the face of the record. After reviewing the record, we find that there are no errors patent.

### *Sufficiency of the Evidence*

In his first assignment of error, Defendant contends that the evidence was insufficient to convict him of possession of cocaine with intent to distribute.

> In reviewing the sufficiency of the evidence to support a conviction . . ., an appellate court in Louisiana is controlled by the standard of review adjudged by the United States Supreme Court in *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979),
>
>> "[T]he appellate court must determine that the evidence, viewed in the light most favorable to the prosecution, was sufficient to convince a rational trier of fact that all of the elements of the crime had been proved beyond a reasonable doubt." *State v. Captville*, 448 So.2d 676, 678 (La.1984).

*State v. Desoto*, 07-1804, p. 7 (La. 3/17/09), 6 So.3d 141, 146.

> In pertinent part, La.R.S. 40:967(A)(1) states, "[I]t shall be unlawful for any person to knowingly or intentionally . . . possess with intent to . . . distribute . . . a controlled dangerous substance or controlled substance analogue classified in Schedule II." Cocaine is one of the controlled dangerous substances classified in Schedule II. La.R.S. 40:964(II)(A)(4). Thus, the prosecution must have proved that (1) Defendant knowing and intentionally possessed cocaine and that (2) Defendant intended to distribute the cocaine.

*State v. Durgan*, 05-1642, p. 6 (La.App. 3 Cir. 5/31/06), 931 So.2d 1182, 1186.

> Intent to distribute can be inferred from the circumstances surrounding the arrest. *State v. Hearold*, 603 So.2d 731 (La.1992). In *Hearold*, the Louisiana Supreme Court explained that: "Intent is a condition of mind which is usually proved by evidence of circumstances from which intent may be inferred." *Id.* at 735. The court further listed five factors useful in determining whether circumstances are such that intent to distribute can be inferred:
>
>> 1) [W]hether the defendant ever distributed or attempted to distribute the drug; 2) whether the drug was in a form usually associated with possession for distribution to others; 3) whether the amount of drug created an inference of an intent to distribute; 4) whether expert or other testimony established that the amount of drug found in the defendant's possession is inconsistent with personal use only; and 5) whether there was any paraphernalia, such as baggies or scales, evidencing an intent to distribute.
>
> *Id.*

*State v. Monceaux*, 04-449, p. 8 (La.App. 3 Cir. 10/20/04), 885 So.2d 670, 675. The evidence need not fall squarely within those listed factors to be sufficient for the jury to find the requisite intent to distribute. *See State v. Collins*, 09-283 (La.App. 5 Cir. 12/8/09), 30 So.3d 72, *writ denied*, 10-34 (La. 9/3/10) ___ So.3d ___; *State v. Crosby*, 98-372 (La.App. 4 Cir. 11/17/99), 748 So.2d 502, *writ denied*, 99-3555 (La. 1/28/00), 753 So.2d 833.

Deputy Steven Poole testified that he, along with Deputy Chris Groh, stopped Defendant at 8:00 p.m. because he was driving with a headlight out. Deputy Groh approached the vehicle and saw an open container of beer in the center console. Deputy Groh then asked Defendant to step out of the vehicle. Deputy Poole ran Defendant's driver's license, which he discovered was suspended. Deputy Groh asked for consent to search the vehicle, and Defendant signed the consent form. Police found nothing inside the vehicle. At that time, Defendant was placed under arrest for driving under suspension, and he was searched by Deputy Groh.

Deputy Poole testified that Deputy Groh recovered "several small plastic baggies" of different sizes and a razor blade from the pocket of Defendant's jacket.

The baggies were those contained in State's Exhibit 6. Defendant stated that the baggies were for his personal use. He also indicated that he had smoked marijuana at his residence earlier in the day. A second search occurred after two lumps were discovered in Defendant's right coat sleeve. At that time, police found cocaine and marijuana.

Deputy Poole recalled "a package of Ziplock baggies" being recovered at Defendant's residence when a search warrant was executed. He further indicated that the baggies were "small."

Defendant made no statement regarding the cocaine. Deputy Groh testified on cross-examination regarding the baggies as follows:

Q Okay. Where were the baggies removed from?

A In a breast pocket in his jacket.

Q Okay. Let me talk about that for a minute. The baggies that were removed were these sandwich type baggies. Is that correct? There were two of these sandwich baggies that were removed from his breast pocket. Correct?

A Correct.

Q Now, these other baggies that they have in here were not on his person. Correct?

A Oh, yes, sir.

Q You are saying they were on his person?

A Show me the baggies you are talking about, please, sir.

Q These small baggies.

A Yes, sir. Those and those.

Q All of these were on the - so, the police officer who indicated you found baggies on top of his refrigerator, would be mistaken of [sic] lying?

A I didn't find any or recover any -

Q Okay. So, you are saying these baggies - these are all the baggies there are. You are saying these small baggies came off of his person. That is what you are telling the Court today and this jury?

A I am trying to think.

Q You think. You are not really sure.

4

A  Those small baggies - it has been awhile.

Q  It has been awhile.  Since December 27, 2007.

A  Yeah.

Q  Are you sure it was not these two small baggies that came out of his breast pocket?

A  It may have been just sandwich bags.

Q  Right.

A  I know for a fact it was sandwich.  I was just making sure -

Q  And the other baggies came from his residence probably.

A  They may have.

Deputy Groh was later recalled to testify by the State.  He agreed that the testimony he gave on direct and cross-examination regarding the baggies was inconsistent.  Deputy Groh further testified regarding the baggies as follows:

Q  Your testimony, as I said, was inconsistent.  The small baggies that were wound together and packaged together tightly.  Where did those baggies come from?

A  From inside the jacket breast pocket.

Q  And the sandwich size baggies that were crinkled and larger, those came from where?

A  From inside the breast pocket.

. . . .

Q  You recall your cross examination?

A  Correct.

Q  What happened there?

A  I fully believed a hundred percent that that is where I had gotten it from, both of them.  And that is where I have gotten them from.  And I don't know what made that statement, that they come off the top of the refrigerator, because, I did not collect anything off of the top of the refrigerator.  No.  I knew in my heart that that is where those bags came from.  That is where I got them from.  Both sets of bags and a razor blade.

Q  Just to be clear.  You disavow the answers that you gave -

A  Correct.

5

Q -as it relates to - let me finish now - the answers that you gave in response to cross examination by Mr. Cortello.

A Correct.

Officer Gregory Jackson testified that he made contact with Defendant on December 27, 2007. He arrived AT the scene of a traffic stop conducted by Deputies Poole and Groh. Officer Jackson was informed that Deputy Groh had found "several plastic baggies" on Defendant and that Deputy Groh intended to search Defendant's vehicle. At that point, Officer Jackson took custody of Defendant and stood on the side of the road with him. Officer Jackson *Mirandized* Defendant and asked Defendant what the "baggies" the other officers had found were for. Officer Jackson testified that Defendant said, "that was for his weed he smoked. He had just smoked before he left home. That's what he put his marijuana in that he smokes." Officer Jackson further testified that Defendant stated that the baggies were for his personal use.

While Officer Jackson and Defendant were waiting for the search to conclude, Defendant's father arrived on the scene. Officer Jackson testified that he went to speak to Defendant's father and that Officer Groh grabbed Defendant by the arm. At that time, Officer Groh felt a bulge or lump in Defendant's arm. Officer Groh then recovered a bag of cocaine and a bag of marijuana from Defendant's person.

Police subsequently obtained a search warrant for Defendant's home. Upon entering the home, Officer Jackson detected the odor of burning marijuana. Defendant's girlfriend, Janice Johnson, subsequently consented to a search. She further told police that Defendant smoked marijuana and that the "items" found within the home were his.

Investigator Tracy Clark inventoried the evidence found at Defendant's residence and testified that "a container of Ziplock baggies, like they are originally packaged when you buy them" was found. However, the baggies introduced at trial were not the baggies that were found at the residence.

6

Chief of Operations Daryl Husbands testified that the evidence submitted to the crime lab was determined to be cocaine, a schedule II narcotic, and marijuana.[1] The bag of marijuana and the bag of cocaine each weighed fifteen grams. Chief Husbands testified that State's Exhibit 6 consisted of "small plastic baggies, ziplock type."

Chief Husbands testified that the two different sizes of baggies presented to him at trial could be consistent with the distribution of marijuana but that they were usually used for distribution of cocaine. The larger baggies could also be used to sell both marijuana and cocaine. Chief Husbands further testified that the presence of the small baggies along with cocaine was consistent with the distribution of cocaine. Chief Husbands testified that cocaine is generally sold in one gram increments. When asked if the amount of cocaine found was consistent with personal use, Chief Husbands testified, "[i]t would take a pretty good user to use, say thirteen grams, if the bag weighs two grams, thirteen grams of cocaine." Chief Husbands was subsequently questioned as follows:

> Q  Does it make sense for someone who has half an ounce of cocaine, a fair amount of cocaine, to take one ounce - excuse me - one gram baggies and divide that half ounce of cocaine into one gram baggies, thirteenish, in order to divide for themselves to use later?
>
> A  No, sir.
>
>     . . . .
>
> Q  Well, it could be, though, that a person keeps a place where they keep their stash and then take a small amount with them when they go somewhere. Correct?
>
> A  That's possible, too.

Janice Johnson testified that she lived with Defendant. She testified that Defendant occasionally smoked marijuana, but he did not sell drugs.

Defendant stipulated that he had two prior convictions for distribution of cocaine.[2]

---

[1]The witness was qualified as an expert.

[2]This stipulation was entered because the Defendant was charged with possession of a firearm by a convicted felon.

Defendant contends that the State did not exclude the reasonable hypothesis, namely that the extra baggies were not for personal use. Defendant further asserts that he informed police that the drugs were for personal use and that this was reported by all police officers who testified in court. Further, the baggies did not contain any drug residue.

In support of his argument that the evidence was insufficient to prove he had the intent to distribute cocaine, Defendant cites Deputy Groh's testimony at the Motion to Suppress hearing, wherein Deputy Groh testified that Defendant possessed two empty baggies.

The State asserts that the following facts were proven at trial: 1) Defendant was in actual possession of cocaine; 2) the substance possessed by Defendant was cocaine; 3) plastic baggies, which are items of paraphernalia associated with the distribution of narcotics, were recovered from Defendant's person; 4) the amount of cocaine, half an ounce, was consistent with distribution; and 5) Defendant had previously distributed cocaine. The State further asserts that the jury was entitled to believe that Defendant was not being truthful when he told Officer Jackson the baggies were for his personal use.

The State notes that it would be improper for this court to consider the transcript of the hearing on the Motion to Suppress in determining the sufficiency of the evidence because the transcript was not introduced at trial. The State's assertion is correct. This court may only consider evidence submitted during trial when conducting a sufficiency review. Thus, we do not consider the testimony presented at the hearing on the Motion to Suppress in our determination of whether the evidence was sufficient to support Defendant's conviction for possession with intent to distribute cocaine.

Viewing the evidence presented at trial in the light most favorable to the prosecution, we find that a rational trier of fact could have found beyond a reasonable doubt that Defendant possessed the cocaine at issue with the intent to distribute. This assignment of error lacks merit.

*Testimony of Deputy Groh and Other Evidence*

In his second assignment of error, Defendant contends that the trial court erred in admitting into evidence the marijuana, cocaine, and empty plastic baggies when the evidence was not properly accounted for and some of the evidence logged in was missing, lost, mishandled, and not identified. In his third *pro se* assignment of error, Defendant states: "The Defendant also admitted that baggies small or large should have been excluded as evidence because [of] inconsistencies and controversies concerning the baggies. Exhibit #6[.]" In his third assignment of error, Defendant contends that the trial court erred in allowing the State to recall Deputy Groh, who completely changed his testimony concerning where the baggies were located and found. In his second *pro se* assignment of error, Defendant contends that the trial court allowed Deputy Groh back into court and to change his testimony concerning the small and large sized baggies at issue. Defendant further contends that this incident was highly prejudicial. In his fourth *pro se* assignment of error, Defendant contends that the trial court erred in allowing Deputy Groh to repudiate his former testimony. We will address these assignments of error collectively.

Defendant asserts that the trial court abused its discretion by allowing the clear plastic baggies into evidence and denied him due process of law and his rights to have his guilt proven beyond a reasonable doubt. Additionally, the trial court, over objection, allowed the State to recall Deputy Groh to the stand and completely change his testimony. Further, Defendant alleges that the record shows the "State did not identify the clear plastic baggies using the prosecutor's own words[;] Dpy. Groh only described the empty baggies 'generically.' Thus, he could not identify the baggies two years after the fact." Defendant also contends that the record shows that Deputy Groh could not "remember or recall because he stated the plastic bags came from the search of Appellant's residence on top of the refrigerator. Dpy. Poole positively testified that the package of ziplock baggies, as opposed to sandwich baggies which do not have a zip but rather fold over, were found at the residence." Defendant further alleges that Deputy Groh and Deputy Poole "fouled-up" the chain of custody

by losing, mishandling, or failing to turn the evidence over to the evidence custodian, Daryl Husbands, to the point that a proper chain of custody could not be laid for its admission. Defendant also points out that Deputies Groh, Poole, and Clark could not testify what happened to the razor blade that was supposedly with the baggies allegedly seized at the traffic stop, or the metal can supposedly seized with the baggies at the Defendant's home. Defendant then asserts that it is very suspect that clear plastic baggies mysteriously appear in both instances where evidence was lost, mishandled, or possibly tampered with.

Defendant contends that by allowing the baggies into evidence, the trial court lowered or watered down the burden of proof on the element of intent. Defendant also contends that the plastic baggies should not have been admitted in evidence because it is not more probable that they were connected to the charge of possession with intent to distribute cocaine, the charge of possession with intent to distribute marijuana, or to this particular drug charge.

Defendant further contends that the items of missing evidence were exculpatory in nature and should have been disclosed by the State in advance of trial pursuant to discovery and *Brady* motions, which were filed. Defendant alleges, that as a result, he was denied due process.

The State conceded that there was a discrepancy in Deputy Groh's testimony regarding the location from where one particular set of baggies came. The State asserts that discrepancy goes to the weight, not the admissibility of the evidence. Additionally, Investigator Clark testified regarding the location of the metal can. The State contends that the can was not introduced because it was irrelevant. Further, the State asserts that the failure to introduce irrelevant evidence cannot be used to disqualify the admission of relevant evidence. The State concedes that the razor blade was not adequately preserved as evidence. However, the State asserts that this fact proves nothing as it relates to the admissibility of the baggies, cocaine, and marijuana.

10

The State further asserts that the marijuana, cocaine, and the lab report identifying the material seized from Defendant were introduced without objection. Furthermore, a clear chain of custody was established for these items, and nothing in Defendant's brief or the record indicates problems with these items.

> To admit demonstrative evidence at trial, an object must be identified, either by testimony that the object is related to the case or by the chain of custody from the time of seizure until presentation at trial. For the admission of demonstrative evidence, it suffices if the foundation laid establishes that it is more probable than not that the object is relevant to the case. *State v. Collins*, 43,645 (La.App. 2d Cir. 10/29/08), 998 So.2d 765, 775; *State v. Toney*, 26,711 (La.App. 2d Cir.3/1/95), 651 So.2d 387.

> It is not necessary that the evidence as to custody eliminate all possibilities that the object has been altered. The state need only establish by a preponderance of the evidence that the object is the one connected with the case. *State v. Collins*, *supra*.

> Identification can be visual or by chain of custody of the object. The identification need not be absolute, certain or wholly unqualified. Where there is some evidence for identification purposes, the objection to the sufficiency goes to the weight rather than admissibility. *State v. Beaner*, 42,532 (La.App. 2d Cir.12/5/07), 974 So.2d 667, 685, *writ denied*, 2008-0061 (La.5/30/08), 983 So.2d 896; *State v. Lawrence*, 40,278 (La.App. 2d Cir.3/15/06), 925 So.2d 727, 747.

*State v. Wilson*, 44,586, p. 7 (La.App. 2 Cir. 10/28/09), 26 So.3d 210, 217.

At the time the State sought to introduce State's Exhibit 6, which consisted of drug paraphernalia, keys, a cell phone, small baggies, and cigarillos, defense counsel objected to the admissibility of the evidence. Defendant's objection was based on the State's alleged failure to lay a proper foundation for the introduction of State's Exhibit 6 since the razor blade seized during the traffic stop was apparently lost.

Deputy Poole testified that he placed items seized during the traffic stop, including the razor blade, in the trunk of his car. He subsequently turned the items over to Chief Husbands, the custodian of records, by placing them in a locker. Deputy Poole testified that only Chief Husbands had access to the locker.

Chief Husbands testified that Deputy Poole turned the evidence admitted as State's Exhibit 6 over to him the day after Defendant's arrest. Although a razor blade was seized, it was not put in the evidence locker.

Deputy Poole further testified that the baggies introduced at trial were those recovered from Defendant's person. Deputy Groh testified that the baggies were those recovered from Defendant's person, on cross-examination he stated they could have been recovered from Defendant's residence, and later testified that they were recovered from Defendant's person.

After reviewing the record, we find that the State laid an adequate foundation for admission of the baggies by showing it was more probable than not that they were connected with the case. Hence, the trial court did not err in admitting the baggies into evidence.

Defendant did not object to the admissibility of the cocaine and marijuana at trial. Thus, Defendant may not now complain about the admissibility of said evidence. La.Code Crim.P. art. 841.

Defendant did not assert any *Brady* claims regarding lost evidence in the trial court, and he may not do so for the first time in this court. Accordingly, we do not review this claim. Uniform Rules—Courts of Appeal, Rule 1-3.

Defendant also asserts that the trial court erred in allowing the State to recall Deputy Groh. The supreme court has explained:

> Allowing the recall rested in the sound discretion of the trial judge. LSA-C.Cr.P. Art. 765(5); LSA-R.S. 15:281. The trial judge did not abuse his discretion by permitting the State to recall the witness in view of the fact that he also gave the defendant the opportunity to conduct further cross-examination. *State v. Smith*, La., 340 So.2d 247 (1976).

*State v. Kirsch*, 363 So.2d 429, 433 (La.1978). Thus, we find that the trial court did not abuse its discretion in allowing the State to recall Deputy Groh, as Defendant was allowed to cross-examine the witness again.

### Motion to Suppress

In his fourth assignment of error, Defendant contends that the trial court erred in denying his Motion to Suppress physical evidence. Defendant asserts that there were two issues concerning the search and seizure: 1) was the valid traffic stop valid; and 2) was the subsequent search warrant legally issued for the search of his home. Defendant then concedes that the traffic stop was valid. However, a search warrant

for the Defendant's home was obtained based on his statement that he had smoked marijuana at his home earlier. Defendant asserts the issue is whether, if he was *Mirandized*, the fact that he stated he smoked marijuana at his home was sufficient to obtain a search warrant for his home.

The State asserts that it did not rely on the fact that baggies were found in Defendant's home to convict him but relied on the fact that baggies were found on his person along with half an ounce of cocaine and marijuana and his criminal history.

The testimony presented at trial indicated the baggies admitted into evidence were those found on Defendant's person. Only Detective Groh indicated that the baggies introduced "may have" been those found at Defendant's residence. However, he later testified that the bags were found inside the pocket of Defendant's jacket. Additionally, Investigator Tracy Clark, who inventoried the evidence seized from the residence, testified that the baggies introduced at trial were not those found in Defendant's residence.

Based on the fact that several baggies were found on Defendant's person, we find that Defendant's conviction would not be reversed if the baggies found at his residence had been suppressed, as the erroneous admission of evidence requires reversal only where there is a reasonable possibility that the evidence might have contributed to the verdict. *State v. Poullard*, 03-940 (La.App. 3 Cir. 12/31/03), 863 So.2d 702, *writ denied*, 04-908 (La. 3/18/05), 896 So.2d 995. For these reasons, this assignment of error lacks merit.

In his first *pro se* assignment of error, Defendant contends that Deputy Groh should have been impeached for bias and interest according to his testimony.[3] We find, however, that the jury heard Deputy Groh's testimony and any credibility determinations it made should not be second-guessed by this court. *State v. Johnson*,

---

[3]It is possible that Defendant's claim could be interpreted as a claim of ineffective assistance of counsel. However, he makes no argument regarding ineffective assistance of counsel and cites no jurisprudence discussing the issue.

13

03-1228 (La. 4/14/04), 870 So.2d 995. Accordingly, this assignment of error lacks merit.

*Acceptance of Chief Husbands as Expert Witness*

In his fifth assignment of error, Defendant contends that the trial court erred in permitting Chief Deputy Daryl Husbands to testify as an expert witness that Defendant possessed cocaine with the intent to distribute. Defendant states that he "objects to trial attn: (Mr. Cortello) when he tendorer [sic] to state witness (Det. Husband) as an expert . . ."[4]

Defense counsel accepted Chief Husbands as an expert witness and no objection was lodged. Thus, we do not consider this assignment of error. La.Code Crim.P. art. 841.

*Sentencing*

In his fifth assignment of error, Defendant contends that the trial court erred in sentencing him to twenty-five years at hard labor for possession with intent to distribute cocaine. In his sixth assignment of error, Defendant contends that the trial court erred in denying his Motion to Reconsider. We address these assignments of error collectively.

This court discussed the standard of review applicable to claims of excessiveness in *State v. Bailey*, 07-130, p. 3 (La.App. 3 Cir. 10/3/07), 968 So.2d 247, 250, as follows:

> A sentence which falls within the statutory limits may be excessive under certain circumstances. To constitute an excessive sentence, this Court must find that the penalty is so grossly disproportionate to the severity of the crime as to shock our sense of justice or that the sentence makes no reasonable contribution to acceptable penal goals and[,] therefore, is nothing more than the needless imposition of pain and suffering. The trial judge has broad discretion, and a reviewing court may not set sentences aside absent a manifest abuse of discretion.
>
> *State v. Guzman*, 99-1753, 99-1528, p. 15 (La.5/16/00), 769 So.2d 1158, 1167 (citations omitted).

---

[4]It is possible that the Defendant's claim could be interpreted as a claim of ineffective assistance of counsel. However, he makes no argument regarding ineffective assistance of counsel and cites no jurisprudence discussing the issue.

In *State v. Smith*, 02-719, p. 4 (La.App. 3 Cir. 2/12/03), 846 So.2d 786, 789, *writ denied*, 03-562 (La.5/30/03), 845 So.2d 1061 (citations omitted), this court discussed the factors it would consider in order to determine whether a sentence shocks the sense of justice or makes no meaningful contribution to acceptable penal goals:

> In deciding whether a sentence is shocking or makes no meaningful contribution to acceptable penal goals, an appellate court may consider several factors including the nature of the offense, the circumstances of the offender, the legislative purpose behind the punishment and a comparison of the sentences imposed for similar crimes. While a comparison of sentences imposed for similar crimes may provide some insight, "it is well settled that sentences must be individualized to the particular offender and to the particular offense committed." Additionally, it is within the purview of the trial court to particularize the sentence because the trial judge "remains in the best position to assess the aggravating and mitigating circumstances presented by each case."

Defendant was convicted of possession with intent to distribute cocaine, which is punishable by imprisonment from two to thirty years with the first two years to be served without benefit of probation, parole, or suspension of sentence. La.R.S. 40:967(B)(4)(b). Defendant was sentenced to serve twenty-five years at hard labor, with the first two years to be served without benefit of probation, parole, or suspension of sentence.

At the sentencing hearing, Defendant informed the trial court that he had two bones broken in his lower back, a broken knee cap, a broken leg, a fracture "on" the right eye, an ACL tear in the left leg, an ankle fracture, and bruising to the upper neck. He stated that doctors were waiting to determine if he needed surgery. He additionally stated that he was scheduled to see the doctor on November 19, and to have therapy on the twentieth. Further, he could not do anything weight-bearing on his left leg. Defense counsel then explained to the trial court that Defendant received the injuries after trial in an accident in connection with which Defendant was arrested.

At the sentencing hearing, the trial court stated the following:

The report that was prepared for me by the Department of Probation and Parole, State of Louisiana pre-sentence investigation was prepared to aide [sic[ me in my deliberations as to what sentence I will impose upon you today. And I did use that in order to make that determination. When sentencing a criminal defendant, I am bound to consult the factors contained in Louisiana Code of Criminal Procedure Article 894.1. Mr.

Bowens, the pre-sentence investigation provides to me that you are a forty-one year old male and a second time felony offender. However, your designation as a second time felony offender is certainly misleading. The only reason you are classified as a second time felony offender by the State of Louisiana is because you pled guilty to three separate counts of distribution of a controlled dangerous substance, Schedule II, namely cocaine, that one time. For purposes of considering the appropriate sentence that I will impose, I must consider you as a four time felony offender. I want you to know that I received from your attorney numerous letters on your behalf written by members of the community. Each extols the fact that you are a church going person and are good to kids. I know you are a nice guy. I have known you probably as long, if not longer, than most of the people that I received letters from. In the letters, I was reminded that you are veteran and that you served your Country honorably. Mr. Bowens, I am glad to hear that you go to church. I also certainly respect your service to our Country. And I thank you for it. However, these facts do not give you a free pass in today's proceedings. However, they do have an impact upon me and my determination of whatever the appropriate sentence that I am going to impose today. Additionally, as a part of this information provided to me, I received a petition for leniency signed by a hundred and eighteen members of our community. In most circumstances I would be impressed by that petition. However, in this situation, a number of the signers of that document have either appeared before me on drug charges or have a rather lengthy drug or criminal history. However, I will tell you this. Some wonderful people that I know did sign the petition and they did send me letters in support of you. Some people that I went to school with. Some people that I respect in the community. I do respect their opinion and I appreciate their taking their time to attempt to assist me in what I am going to do with you today. However, as for those upstanding members of our [s]ociety, I really wonder if they would be so forgiving or even agree to provide you a recommendation if they knew your entire criminal history. Because, if they did, knowing these people the way I do, I am not sure they would want a career criminal such as you walking the streets without a restriction. We are going to recount your past, for the record. The record before me shows that you were arrested for aggravated assault in 1994 and no action was ever taken by authorities. Next you were arrested for disturbing the peace by fighting in April of 1995 and the matter was charged, but never prosecuted to finish. The record shows that you were next charged in July of 1995 of attempted first degree murder. But, the matter was - subsequently indicted by Grand Jury for aggravated obstruction of a highway. That matter was subsequently dismissed with no action by the District Attorney in 2001. On January 23, 1998, you were arrested for possession of a gun with obliterated serial number, along with being charged with driving under suspension. You simply paid a one hundred dollar fine for the DUS and although billed, no action was ever taken on the firearm charge. There are several other charges that were misdemeanors that it was alleged that you had committed. Either no action was taken or they amounted to little or nothing. Thus they had no influence on my decision. Finally, on April 28, 1998, you were arrested for the manufacture or distribution of Schedule II drugs, as well as distribution of cocaine. On August 12, 1998, you were arrested for attempted possession of marijuana with the intent to distribute and two counts of distribution of cocaine. You entered a guilty plea on August 26, 1999 to three counts of distribution of cocaine. In exchange for the guilty plea you received a sentence of five years on each charge to run

concurrent with each other and a five thousand dollar fine on each count. So, basically, fifteen thousand dollars. The marijuana charge and the manufacture and distribution charge were not pursued by the State at that time as part of the plea agreement. You were released from incarceration on March 5, 2002. You immediately violated your parole by failing to contact your supervising officer upon your release. A reprimand was placed in your file for drinking alcoholic beverages while on parole and you served some time in jail for that. On February 4, 2004 you tested positive for cocaine and opiates. This also constituted a violation of your parole and you were again placed in jail. Finally, you received your first offender pardon on October 21, 2009 and were released from supervision. These charges all proceeded [sic] the charges that we are here on today. In the instant matter, you were originally charged with possession of marijuana, with intent to distribute; possession of cocaine, with intent to distribute; possession of a firearm by a convicted felon. As you know, the Jury convicted you of simple possession of marijuana and possession of cocaine, with intent to distribute. Finally, while out on bond pending sentencing today, over the Labor Day Weekend, you were the driver of an automobile accident [sic], wherein a passenger was killed. Preliminary results from the State Police Lab indicate that you had a blood alcohol concentration of .09 percent by weight based upon grams of alcohol per 100 cubic centimeters of blood while you were operating the vehicle at that time. That blood alcohol exceeds the legal limit. And as a result you could be subject to further criminal proceedings. Either you are the most picked upon person in LaSalle Parish or a career criminal. From the information before me, I believe it is the latter. Your continued criminal history shows me that you have engaged in felony criminal activity since you were twenty-seven years old. Basically, you have been involved in the criminal judicial system your entire adult life, since you were discharged from the Military. Your continued violations of the [r]ules of [s]ociety show me that you either make poor decision or think you are above the law. I would like to think that you do make poor decisions. But, I honestly believe that you have no respect for the law and generally believe you can do what you want to do. The general tenor of all the letters that I received on your behalf is that you have made mistakes and that you should be given another chance, because you have learned from those mistakes. This really rings home to me. I really understand those type of thought processes. I know that all people make mistakes. And I know that it is our innate nature to forgive those who make mistakes and help them to rehabilitate themselves. That is the first avenue that I always look at when I do make a sentencing determination in this regard. Others have requested that you be given a fair chance. I do not know what that means, but I certainly believe that you have been treated fairly by the process here in LaSalle Parish. You have numerous arrest[s] and very few convictions. Seemingly you have been given chance after chance. I do not know why a fourth chance would make you any more of a conscientious citizen than your previous chances afforded you by your brushes with the law. Some have asked me to allow you the opportunity to be a father, role model and authority figure for your children. With all due respect, what kind of role model or father figure have you been the last seventeen years, given your criminal history. I have no information that you have ever held gainful employment for a significant period of time. My information shows that you served in the Military for three years until 1991, when you received a honorable discharge. I have other information that you indicated that you evidenced an intent to enter barber school, but, never completed

your training. I am also told that you worked for the Sonic Drive-in during your parole period. I have no other information as to how long that employment lasted or if it lasted past your parole supervision expiration. Other than doing lawn care around your family property, I know of no other employment in which you have been - engaged. I am tempted to ask the question, how do you survive financially?

. . . .

Okay. Because of your continued criminal history and your past actions, I must find that there is an undue risk that you would commit another crime, if you were given a suspended sentence or placed on probation. This route simply does not seem to be a viable option, given your continued disrespect for the law. Your escapade in the vehicle over the Labor Day Weekend certainly is evidence to that. Additionally, the record is clear that you cannot effectively participate in a [f]ree [s]ociety. It appears that from the information provided to me that if you are not in the custody of the State of Louisiana, you are engaged in some type of criminal activity, whether it be selling drugs or using drugs. Accordingly, given your continued history of drug arrest[s] and the prior arrest[s] and convictions of distribution of cocaine as well as the instant drug charges on which your conviction is based, I believe that you are in need of correctional treatment that can be provided most effectively by the commitment to an institution. Possession of marijuana and possession of cocaine with intent to distribute are serious offenses and they should not and will not be treated lightly in this Court. I know one might say that you are a user and not a seller. I believe that was one of your defenses at the trial. A matter of fact, I heard that from you this morning in your statement to me prior to sentencing. However, your history betrays you, Clyde. Further a [j]ury of twelve people found that, at least, the cocaine was intended to be distributed. Possession of cocaine with intent to distribute is a crime that simply preys on the weaknesses of others and helps you to make a profit on the sell [sic] of these poisons. This is not even a situation where treatment alone can even help you. Therefore, I believe that a lesser sentence would deprecate the seriousness of the offense charged. I do understand that you sustained multiple injuries in the automobile accident over the Labor Day Weekend. You recounted numerous injuries to your lower extremities and to your neck. However, it is also my understanding that you have been released from the hospital and you are not being confined to a medical care facility, at this point. However, I do assure you that whatever treatment is necessary for you to make a full and healthy recovery, will be provided by officials in our justice system. And I will promise you, you will not suffer from a lack of care in that regard. As indicated earlier, as a part of my pre-sentence investigation report, I was provided information that you are forty-one years of age. I know that you have several children, that I would assume rely on you to some extent for support. Since you have no job, what support you give them I do not know. However, the report indicates that you have not been able to maintain consistent employment and have no outstanding or marketable skill. Therefore, it seems the only way in [f]ree [s]ociety for you to make a living is by selling drugs or living off the generosity of your family. That ends today. Accordingly, in light of my review of my pre-sentence investigative report and in consideration of the factors contained of Article 894.1, Subsection A, Subsection (1) through (3) of the Louisiana Code of Criminal Procedure . . . .

Defendant filed a Motion to Reconsider his sentence. At the hearing on the motion, defense counsel asserted that he wanted the trial court to reconsider the sentence because of Defendant's health and the fact that the trial court incorrectly referred to him as a career criminal and considered his prior arrest record. Defense counsel then asserted that he did not give Defendant an opportunity to address any of those issues. Further, he believed that the presentence investigation report contained information regarding a vehicular homicide that he had not been charged with "or was not given an opportunity or notice to address the accusations as to what exactly happened in that particular case." Defense counsel then asserted that Defendant's sentence was excessive. Defense counsel subsequently asserted that the defense was not given the opportunity to see the presentence investigation report. He then admitted that he did not ask to see the report. The trial court then denied the motion to reconsider.

In brief to this court, Defendant contends that the trial court erred in considering evidence of a vehicular homicide allegedly committed by him over the Labor Day weekend while he was out on bond because this evidence was outside the record. Defendant further contends that the trial court stated in the record that lab reports indicated that Defendant's blood alcohol concentration of .09 percent exceeded the legal limit. The trial court then labeled Defendant a career criminal.

Defendant further contends that he was not given a chance to see, correct, or respond to the allegations in the presentence investigation report. Additionally, he claims that he was denied due process of law when arrests which had been dismissed were used in determining that he was a career criminal and when the trial court used information outside the record.

> While a defendant is guaranteed the right to contest allegations and statements in a PSI report and additional information to which the sentencing court was exposed, defense counsel must make a timely request prior to sentencing for access to the PSI report and must make some showing that the report contains, or other information upon which a trial court relies in imposing sentence consists of, *materially false or misleading information prejudicial to the defendant*. *State v. Coleman*, 574 So.2d 477 (La.App. 2 Cir.1991). Where a trial court fails to allow a defendant access to the report and an opportunity to rebut any adverse

and materially prejudicial information, reversible error has occurred. *State v. Underwood*, 353 So.2d 1013 (La.1977). The defendant must show that he has suffered prejudice as the result of the inclusion of the inaccurate information in the report. See *State v. Hammond*, 526 So.2d 1257 (La.App. 3 Cir.1988).

*State v. James*, 95-962, pp. 7-8 (La.App. 3 Cir. 2/14/96), 670 So.2d 461, 466.

We find that the record fails to reflect that Defendant ever requested access to the presentence investigation report. Absent such a request, Defendant is deemed to have waived his right to access the report. *See State v. Grey*, 408 So.2d 1239 (La.1982).

> The sources of information relied upon by the sentencing court are varied and may include evidence usually excluded from the courtroom at the trial of guilt or innocence, e.g., hearsay and arrest as well as conviction records. *Williams v. New York*, 337 U.S. 241, 69 S.Ct. 1079, 93 L.Ed. 1337 (1949); *State v. Washington*, 414 So.2d 313 (La.1982); *State v. Brown*, 410 So.2d 1043 (La.1982). Because the scope of information available to the court for sentencing purposes is so broad, the defendant has a due process right to rebut prejudicially false or misleading information which may affect the sentencing determination. *State v. Lockwood*, 439 So.2d 394 (La.1983); *State v. Parish*, 429 So.2d 442 (La.1983); *State v. Underwood*, 353 So.2d 1013 (La.1978). The defendant also has the due process right to sentencing free of assumptions about his prior record which are materially untrue. *Townsend v. Burke*, 334 U.S. 736, 68 S.Ct. 1252, 92 L.Ed. 1690 (1948); *cf.*, *United States v. Tucker*, 404 U.S. 443, 92 S.Ct. 589, 30 L.Ed.2d 592 (1972).

*State v. Myles*, 94-217, pp. 2-3 (La. 6/3/94), 638 So.2d 218, 219.

Absent a defendant's assertion that he was falsely or mistakenly charged with an offense, the sentencing court may consider a dismissed charge as part of the defendant's criminal history. *State v. Falcon*, 44,829 (La.App. 2 Cir. 10/28/09), 26 So.3d 172. Additionally, in *State v. Jenkins*, 419 So.2d 463 (La.1982), the court found no error in the trial court's consideration at sentencing of a charge that occurred after the offense for which the defendant was being sentenced. *See also State v. Horne*, 438 So.2d 252 (La.App. 3 Cir. 1983). Accordingly, the trial court properly considered Defendant's prior arrests and the arrest that occurred over the Labor Day weekend.

The presentence investigation report indicated that on September 5, 2009, Defendant was involved in a vehicle accident in which someone was killed. Further,

the matter was investigated by the Louisiana State Police and possible charges were pending. Information regarding Defendant's blood alcohol concentration was not contained in the presentence investigation report. However, the trial court's reasons for sentence were thorough, and we find that Defendant's blood alcohol level alone would not have influenced the sentence imposed. *See State v. Davenport*, 06-363 (La.App. 3 Cir. 9/27/06), 941 So.2d 629 (indicating that improper considerations could be removed from the trial court's reasons for sentencing when determining whether a sentence was excessive).

The first two factors listed in *Smith*, 846 So.2d 786, were covered by the trial court's reasons for sentencing. We now consider Defendant's claim that his sentence is excessive. In *State v. Graves*, 01-156 (La.App. 3 Cir. 10/3/01), 798 So.2d 1090, *writ denied*, 02-29 (La. 10/14/02), 827 So.2d 420, the defendant was sentenced to serve twenty-five years for possession with intent to distribute cocaine. This court noted a review of the presentence investigation report showed the defendant had engaged in criminal conduct for over thirty years. He had been convicted of four felonies prior to the offense at issue, one of which involved drugs. In a footnote, this court indicated the presentence investigation report showed the defendant was convicted of selling narcotic drugs in Huntsville, Texas, on May 28, 1971; unauthorized entry into a place of business in Ouachita Parish, Louisiana, on December 17, 1989; auto theft in Jefferson County, Texas, on March 3, 1990; and burglary of habitat in Harris County, Texas, on August 24, 1994. The court further noted he had numerous misdemeanor convictions, including two involving the possession of marijuana. Because the defendant was in the possession of a large quantity of illegal substances, 2,329.5 grams of marijuana and 6.27 grams of cocaine, the facts of the case, and the defendant's previous criminal record, this court found that his sentence was not excessive.

In *State v. Clark*, 05-61 (La.App. 5 Cir. 6/28/05), 909 So.2d 1007, *writ denied*, 05-2119 (La. 3/17/06), 925 So.2d 538, the defendant was sentenced to twenty-five years at hard labor for possession with intent to distribute cocaine. The court noted

that the defendant was a fourth felony offender who had been convicted of theft over five hundred dollars, armed robbery, and possession of heroin. He had an extensive arrest history, which included two arrests for simple battery and one for battery on a police officer. His record also included arrests for misdemeanor theft and some municipal offenses. The defendant admitted to abusing marijuana, crack cocaine, and alcohol, but claimed to have stopped abusing those substances in 2000. He completed the ninth grade, was not married, and had no children. Further, trial testimony indicated that the defendant assisted a lady in caring for her grandchild, who was infected with HIV. After considering these factors, the court found the defendant's sentence was not excessive.

Based on the cases cited herein and Defendant's criminal history, we find that the sentence imposed is not excessive. Accordingly, the trial court properly denied Defendant's Motion to Reconsider sentence, and this assignment of error lacks merit.

## DECREE

For all of the foregoing reasons, Defendant's convictions and sentences are affirmed.

**AFFIRMED.**

This opinion is NOT DESIGNATED FOR PUBLICATION. Uniform Rules—Courts of Appeal, Rule 2-16.3.